FLOYD GARLOCK, INDIVIDUALLY, AND ESTATE OF JOSEPHINE GARLOCK, DECEASED, FLOYD GARLOCK, ADMINISTRATOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 62214, 69190.   Filed June 29, 1960.

*Hugh R. Jones, Esq.*, for the petitioners.
*A. J. Duke, Esq.*, for the respondent.

BRUCE, *Judge:* These consolidated proceedings involved deficiencies in Federal income tax for the years 1952 and 1953 in the amounts of $414.32 and $426.16, respectively. The sole issue is whether the amounts of $1,820 expended by petitioner in each of the years 1952 and 1953 for meals and lodging constitute away-from-home expenses within the meaning of sections 23(a)(1)(A) and 22(n), I.R.C. 1939.

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Floyd Garlock, hereinafter referred to as petitioner, is an individual whose legal domicile during the years 1952 and 1953 and since 1922 has been at 3 South Washington Street, Mohawk, New York. Petitioner's wife, Josephine Garlock, and his mother lived at this address during the years 1952 and 1953. Petitioner's wife died on January 10, 1956, and letters of administration were issued to petitioner by the Herkimer County Surrogate's Court on April 30, 1956. Petitioner has continued to act and is now acting as administrator of the estate of Josephine Garlock. Petitioner and his wife filed a joint Federal income tax return for each of the years 1952 and 1953 with the district director of internal revenue at Syracuse, New York. The Estate of Josephine Garlock, Deceased, Floyd Garlock, Administrator, is a party herein solely by reason of the filing of said joint return.

Petitioner was a mechanic who serviced and repaired heavy-duty earth-moving equipment used in road construction, bridge building, and similar jobs.

In 1950, while working on a road construction job at Binghamton, New York, petitioner joined the International Union of Operating Engineers (A.F. of L.) Local 410, Binghamton. Petitioner continued as a member of that union and was such in 1952 and 1953. There has never been a local of said union in the vicinity of Mohawk, New York.

In November 1950, petitioner was assigned by his union local to work at a job in New Jersey for Union Building & Construction Corp., a large firm of engineering contractors whose principal office was located in Passaic, New Jersey, and which was engaged in numerous road construction and bridge-building projects at various places in New Jersey and elsewhere.

Petitioner had no written contract of employment with the Union Building & Construction Corp.

During the years 1950 through 1954 petitioner was employed by Union Building & Construction Corp., at various locations in New Jersey, on road, bridge, and airport landing strip construction projects. The locations of the project sites and the length of time employed at each site are as follows:

| Year | Location | Duration of employment |
|------|----------|------------------------|
| 1950 and 1951 | New Jersey Turnpike | [1] |
| 1952 | Alpine | 4 months |
|  | Richfield Park | 6 months |
|  | Newark | Balance of year |
| 1953 | Newark | 9 months |
|  | Sayreville | Balance of year |
| 1954 | Sayreville | 1 month |
|  | Clifton | 2 weeks |
|  | Bloomfield | [1] |
|  | Irvington | [1] |

[1] Duration not stated.

While employed at these locations petitioner lived in private homes or roominghouses in the immediate vicinity of the construction sites and ate at restaurants in the same vicinity. As petitioner was reassigned from one construction site to another he acquired new accommodations in the vicinity of each new site.

All of the foregoing project sites, with the exception of Sayreville, are within a radius of 15 miles of Passaic, New Jersey. Sayreville is within 30 miles of Passaic. The project sites are located between 210 and 250 miles by automobile from Mohawk, New York, and approximately 150 to 180 miles from Binghamton, New York.

The petitioner's work at the various construction sites did not continue until the individual projects were completed, but instead involved a relocation from site to site as his services were needed. Such relocation was directed by the master mechanic who was both a union representative and an employee of the construction company. Each relocation was to another construction project of the Union Building & Construction Corp., and was presumably at the desire and for the benefit of said company.

During each of the years 1952 and 1953 petitioner worked 60 to 70 hours per week. His employment was continuous, without the loss of a single working day between reassignments from one construction site to another. He returned to his home in Mohawk on Easter, Decoration Day, Fourth of July, Thanksgiving (1953), and Christmas, and for 15 days in November 1952 and 9 days in March 1953.

As a member of one union local, petitioner, in order to work at his craft within the territorial jurisdiction of another local, was required by union rules to obtain the consent of the foreign local. Such consent was evidenced by the issuance of a weekly "temporary permit." Such temporary permit was valid for 1 week and had to be renewed each week. For each permit petitioner was required to pay a "doby-fee" of $2.50 per week. There was no assurance that the weekly permits would be renewed since the union local in whose jurisdiction the work is performed gives preference to members of its own local if they become available.

In each of the years 1952 and 1953 petitioner paid $1,820 for room and board while at the various locations in New Jersey set forth above.

Petitioner was never reimbursed by his employer for his room or board.

In his 1952 return petitioner claimed as a miscellaneous deduction $1,820 for room and board while away from home and $719.80 for other itemized deductions.

In his 1953 return petitioner claimed as a miscellaneous deduction $1,820 for room and board while away from home and $903.37 for other itemized deductions.

For the year 1952 respondent disallowed the deduction in the amount of $1,820 for room and board and since the balance of the itemized deductions ($719.80) was less than the standard deduction, these were disallowed and the tax determined allowing the standard deduction, resulting in a deficiency of $414.32.

For the year 1953 respondent disallowed the deduction in the amount of $1,820 for room and board and since the balance of the itemized deductions ($903.37) was less than the standard deduction, these were disallowed and the tax determined allowing the standard deduction, resulting in a deficiency of $426.16.

During the years 1952 and 1953 petitioner's principal place of employment was the area around Passaic, New Jersey, for an indefinite period of time.

## OPINION.

Petitioner maintained a domicile and residence in Mohawk, New York, and was affiliated with a local union in Binghamton, New York, throughout the pertinent period. In November 1950 petitioner was assigned by his union to employment with a large construction corporation in Passaic, New Jersey. This employment, not based upon an employment contract, continued from November 1950 until sometime during the year 1954, during which petitioner performed work as a heavy-duty equipment mechanic at various construction project sites of his employer in the vicinity of Passaic, New Jersey. Petitioner seeks to deduct as ordinary and necessary business traveling expenses amounts incurred for meals and lodging during the years 1952 and 1953 while engaged on the New Jersey construction sites under sections 23(a)(1)(A)[1] and 22(n),[2] I.R.C. 1939.

Section 23(a)(1)(A) provides, *inter alia*, for the deduction of ordinary and necessary business "traveling expenses (including the entire amount expended for meals and lodging) while away from home in pursuit of a trade or business." One of the conditions which must be satisfied before a deduction is allowable for traveling expenses is that the taxpayer must show that the expenses were incurred "while away from home." *Commissioner* v. *Flowers*, 326 U.S. 465 (1946). For purposes of the statute, "home" means the taxpayer's principal place of business, employment, or post or station at which he is employed. *James R. Whitaker*, 24 T.C. 750; *Mort L. Bixler*, 5 B.T.A. 1181. It is well established that expenses of meals and lodging at the place of a taxpayer's principal employment are nondeductible personal expenses. Similar expenses incurred while

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *

[2] SEC. 22. GROSS INCOME.

(n) DEFINITION OF "ADJUSTED GROSS INCOME".—As used in this chapter the term "adjusted gross income" means the gross income minus—

(1) TRADE AND BUSINESS DEDUCTIONS.—The deductions allowed by section 23 which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee;

(2) EXPENSES OF TRAVEL AND LODGING IN CONNECTION WITH EMPLOYMENT.—The deductions allowed by section 23 which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee;

temporarily employed away from home are deductible traveling expenses within the meaning of section 23(a)(1)(A). *Harry F. Schurer*, 3 T.C. 544. However, if the employment while allegedly away from home is of or ripens into a substantial, indefinite, or indeterminate, rather than a temporary duration, the situs of such employment for purposes of the statute becomes petitioner's tax home and expenses of meals and lodging there incurred are not deductible. *Commissioner* v. *Peurifoy*, 254 F. 2d 483 (C.A. 4, 1957), affd. 358 U.S. 59 (1958); *James M. Eaves*, 33 T.C. 938; *John J. Harvey*, 32 T.C. 1368, on appeal (C.A. 9); *Kermit L. Claunch*, 29 T.C. 1047, affd. 264 F. 2d 309 (C.A. 5, 1959). Thus, the issue for our decision is whether, during the years 1952 and 1953, petitioner's employment in New Jersey was "temporary" or "indefinite."

Petitioner contends that the work he did on each construction project constituted a separate and distinct temporary job and that his home for tax purposes was in Binghamton, New York, throughout the years in issue. In support of his position that the separate and distinct jobs were temporary in nature petitioner maintains that during the years 1952 and 1953 he was assigned to four different jobs, each of which was held under oral agreement; that he was never given any assurance as to the duration of his employment; and that he could be discharged at any time without advance notice. Furthermore, petitioner contends that certain union practices lend additional support to the nature of his employment as "temporary." He maintains that under union rules he was obliged to pay a weekly "doby-fee" for which he received a weekly "temporary" permit to work in the area of the New Jersey local; that he had no assurance at any time that when he appeared at the end of 1 week he would get a temporary permit for the next week; that the union's description of the work permit as "temporary" is indicative of the essential character of the work performed under it; and that under union rules petitioner, as a member of the Binghamton local, could be replaced if a heavy-duty mechanic in the New Jersey local became available.

We do not agree with petitioner's position. We view petitioner's employment during the taxable years in issue as constituting one single job rather than several distinct and separate jobs. It is true that during the 2 years in issue petitioner worked at four different construction sites. However, a mere geographical relocation from one construction site to another does not of itself automatically give rise to a new, separate and distinct job. Here all of the construction sites were, with one exception, within a 15-mile radius of Passaic, New Jersey. At each of them petitioner worked for the same employer and although petitioner's relocations may have been sudden

and without advance notice, they were presumably at the direction of and for the benefit of his employer.

It is clear that during the taxable years petitioner's principal place of employment was within a reasonably confined area around Passaic, New Jersey, and that such employment was for an indefinite period of time. Petitioner worked in the Passaic area for a period of approximately 4 years. Assuming, *arguendo*, that at the time of his assignment to the New Jersey job by his Binghamton local petitioner's employment was "temporary," it is clear that by the time of the taxable years in issue his employment had become "indefinite." With the exception of several brief vacations, petitioner worked continuously for the same employer without the loss of a single working day between reassignments. He did not return to either Binghamton or his residence in Mohawk, New York, between relocations or reassignments from one New Jersey construction site to another. Petitioner's reassignments arose from his association with his employer and not from his membership in the Binghamton local.

Petitioner's employment may have lacked real permanence, but the mere absence of permanence does not necessarily imply that degree of temporariness which would allow deductibility of traveling expenses. The substantial and actual duration of petitioner's employment in New Jersey indicates its indefiniteness. *Commissioner* v. *Peurifoy, supra; James R. Whitaker, supra; Beatrice H. Albert*, 13 T.C. 129.

Nor is it disputed that petitioner's employment was in part dependent upon the unavailability of similarly skilled heavy-duty equipment mechanics in the New Jersey local. But the fact remains that petitioner held this job for approximately 4 years during which period his weekly "temporary" permits were consistently renewed. Furthermore, petitioner himself testified that heavy-duty equipment mechanics were in short supply. The apparent vastness, multiplicity, and variety of the construction projects in which petitioner's employer was engaged, give rise to an obvious need for men possessing petitioner's vocational skills and, when combined with such a shortage of skilled mechanics, lend a degree of permanence to petitioner's allegedly impermanent and transient employment. Finally, the mere labeling or designation of a job or job permit as "temporary" by either union or employer is not determinative of the issue herein involved. Cf. *John J. Harvey, supra.*

We hold that petitioner's principal place of employment during the years 1952 and 1953 was the area around Passaic, New Jersey, for a substantial, indefinite, and indeterminate period of time and expenses for meals and lodging there incurred during those years are not deductible as "away from home" traveling expenses.

*Decisions will be entered for the respondent.*