Thomas J. Doyle and Laura A. Doyle v. Commissioner.
Doyle v. Commissioner
Docket No. 1189-62.
United States Tax Court
T.C. Memo 1964-110; 1964 Tax Ct. Memo LEXIS 227; 23 T.C.M. (CCH) 638; T.C.M. (RIA) 64110; April 24, 1964
Frank C. Scott, Stockton 1, Calif., for the petitioners. Arthur P. Generaux, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1958, 1959, and 1960 in the amounts of $808.55, $914.54, and $1,412.27, respectively. Respondent has conceded all issues for the year 1960, leaving for our decision the following issue: Whether petitioner Thomas J. Doyle is entitled to deductions of traveling expenses while away from home in the pursuit of a trade or business for the calendar years 1958 and 1959 in the respective amounts of $3,094.53 and $3,523.07. Findings *228 of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, Thomas J. Doyle and Laura A. Doyle, husband and wife residing in Lodi, California, filed their joint Federal income tax returns for the calendar years 1958 and 1959 with the district director of internal revenue at San Francisco, California. Thomas J. Doyle (hereinafter referred to as petitioner) is a competent and experienced construction superintendent. He has been in this line of work since the early 1930's. Since 1950 he was engaged in supervisory positions on construction sites as follows: Apr. 1950
July 1951
Eniwetok
Sept. 1951
May 1953
Morocco
Jan. 1955
May 1955
Philippines
Oct. 1957
Jan. 1960
Wright-Patterson Air
Force Base near
Dayton, Ohio
Mar. 1960
Nov. 1960
Panama
Petitioner and his family moved to Lodi, California in 1944. Petitioner built a home there and has continued to own a house in Lodi and maintain it as a residence since that time. Petitioner and his wife have made certain investments in real estate in that area. At the beginning of 1958 they had real estate holdings in the Lodi area which had cost them approximately $150,000 *229 and had an appraised value of approximately $200,000. Petitioner intended to work primarily on foreign construction projects were he felt it would be impossible to take his family and wanted to have a home in Lodi because his wife's family lived there. Petitioner also believed the Lodi area offered growth potential in real estate and had decided to invest in business properties in that area. In addition to their residence, petitioner and his wife owned seven apartment units, a real estate office, a grocery store, a bar, and a gasoline station. Most of these properties were under lease. Petitioner's wife managed the properties when he was working on construction jobs. In those intervals when petitioner was not away, he assumed responsibility for the management of the real estate holdings and did some of the repair and maintenance work himself. In September 1957 petitioner was contacted by telegram by the Ralph M. Parsons Company (hereinafter called Parsons) concerning an employment opportunity. Parsons' headquarters were located in Los Angeles, California. Parsons hired petitioner to replace a resident engineer for a design and supervision contract it had at the Wright-Patterson Air *230 Force Base near Dayton, Ohio. The resident engineer whom petitioner was hired to replace had suddenly died. At the time petitioner accepted the position with Parsons, there was no arrangement as to the duration of this employment, although it was his understanding that it would be for a period of probably 90 days and not over 6 months. Parsons' contract with the United States Army Corps of Engineers called for the position which petitioner went to take to be filled by a resident engineer. Petitioner was not an engineer but because of Parsons' need to have an experienced man at the work site, Parsons placed petitioner in the position which was required by the contract to be filled by a resident engineer. Parsons' contract called for its supervision of part of the construction of a nuclear reactor. The original contract with the United States Army Corps of Engineers was executed in October 1956 and provided for an estimated completion date of 25 months. At the time petitioner was employed by Parsons, the project had been under way for approximately 11 months. Since the start of the project, there were many design changes and delays in construction resulting from the experimental *231 and developmental nature of the work so that the project was behind schedule when petitioner was hired. The changes were ordered by the Atomic Energy Commission and other governmental bodies primarily for reasons of safety. The officers of the Corps of Engineers responsible for the overall construction of the reactor were concerned about the delays. In their opinion Parsons was responsible for some of the delays and miscalculations. Within a short time after he arrived, petitioner was able to amend some of Parsons' operating procedures so that the officers of the Corps of Engineers were more satisfied with Parsons' performance under its contract. Petitioner was then given the title of resident manager. The area engineer of the Corps of Engineers accepted petitioner as resident manager in lieu of the resident engineer called for by the contract. Because of the improvement in operations resulting from the changes petitioner had instigated and the improvement in relations with the personnel of the Corps of Engineers by the latter part of 1957, petitioner understood that he would continue on the work at Wright-Patterson Air Force Base longer than he had originally anticipated and perhaps *232 until the end of the project. Petitioner remained on the job for 28 months but left before the project was completed, because the Corps of Engineers directed Parsons to reduce its personnel to two engineers specified by name. The area engineer in a letter to Parsons highly commended petitioner's work at the Wright-Patterson Air Force Base project. The overall project took approximately 5 years for completion. During the time petitioner was working on the Wright-Patterson Air Force Base project, he made five or six trips to Louisville, Kentucky in connection with his work. On these trips he would go to Louisville and return the same day. Petitioner made a trip to Lodi during the latter part of 1958 in order to negotiate a lease of one of petitioner's business properties. Petitioner left Ohio in January 1960 and went to Parsons' headquarters in Los Angeles, California. Parsons kept petitioner in its Los Angeles office for a period of about 3 weeks attempting to find another assignment for him. Parsons' bids on work on which petitioner might be used were unsuccessful. Petitioner returned to Lodi in February 1960. During petitioner's stay in Ohio, his wife had remained in Lodi except *233 for one visit to Ohio in December 1959. She returned to the west coast with petitioner in January 1960. While petitioner was employed at Wright-Patterson Air Force Base he maintained an apartment in Fairborn, Ohio, a small town situated near the base and Dayton. His expenses for lodging, utilities, meals and tips, and laundry were $3,079 and $3,496 for the years 1958 and 1959, respectively, and his employer reimbursed him for these expenses to the extent of $1,800 per year. Petitioner on his income tax returns showed as away from home expenses the amounts of $3,094.53 and $3,523.07 for the years 1958 and 1959, respectively, which he offset in each year by the amount of $1,800 received as reimbursement from Parsons, claiming the net amounts as deductions. Respondent in his notice of deficiency increased petitioners' income as reported by $3,094.53 in the year 1958 and $3,523.07 in the year 1959 with the following explanation: The deduction of $3,094.53 [and] $3,523.07 * * * for the taxable years 1958 [and] 1959 * * * respectively, claimed as expenses away from home have been disallowed because it has not been established that these amounts constitute ordinary and necessary *234 business expense or ordinary and necessary expense for the production or collection of income or were expended for the purpose designated. Opinion Section 162(a)(2) of the Internal Revenue Code of 1954[1] provides for the deduction as a business expense of traveling expenses while away from home in pursuit of a trade or business. In order for such expenses to qualify for deduction they must: (1) be reasonable and necessary, (2) have been incurred while away from home; and (3) be incurred in the pursuit of business, Commissioner v. Flowers, 326 U.S. 465 (1946). This Court has consistently held where these criteria can otherwise be met, that when the taxpayer's employment at the place where the expenditures for travel including meals and lodging are made is temporary, such expenditures are made "away from home" and are deductible but when such expenditures are made at a place at which the taxpayer's employment is indefinite or indeterminate, they are not deductible since such expenditures are not made "away from home" within the statutory meaning of "home". Darrell Spear Courtney, 32 T.C. 334 (1959) and cases there cited. *235 What constitutes "temporary" as distinguished from indefinite is a factual question. One of the facts to be considered is the actual duration of the employment. Floyd Garlock, 34 T.C. 611, 616 (1960). Consideration is also to be given to the type of employment and whether its termination could be foreseen within a definite period. Leo C. Cockrell, 38 T.C. 470 (1962), affirmed 321 F. 2d 504 (C.A. 8, 1963). Petitioner here contends that the temporary versus indefinite test should be disregarded. He argues that the words, "temporary" and "indefinite" suggest no real alternative and that their definitions overlap to a considerable extent. Petitioner then urges that this Court should define the word, "home" as used in section 162(a)(2) in such a way as to eliminate the necessity of determining whether employment at a specific place is "temporary" or "indefinite." Petitioner argues that in circumstances of employment of a taxpayer for one project such as Parsons' employment of petitioner, the definition of "home" should be the taxpayer's place of permanent residence and cites in support thereof Harvey v. Commissioner, 283 F. 2d 491 *236 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959). Without attempting a specific definition of "home" as used in section 162(a)(2) and the similar provisions of the Internal Revenue Code of 1939 and prior revenue acts, we have held that a taxpayer's home for tax purposes is at his "place of business, employment, or post or station at which he is employed." James R. Whitaker, 24 T.C. 750, 753 (1955), and cases there cited. While expressly declining to define "home" or "tax home" the Supreme Court in Commissioner v. Flowers, supra, in effect, adopted the view that home meant principal place of business or business headquarters. The logic underlying the holding that expenses incurred by a taxpayer in traveling from the city in which he maintained a home for his family to the city in which his business headquarters were located were not deductible as ordinary and necessary business expenses since the amounts were expended not for a business purpose but because of the personal desire of the taxpayer not to move his family home, is that such taxpayer's post of duty was his tax home. In Peurifoy v. Commissioner, 358 U.S. 59 (1958), the Supreme *237 Court accepted on the basis of the case as presented that amounts expended by a taxpayer for traveling to and meals and lodging at a place of "temporary" employment as contrasted with "indefinite" or "indeterminate" employment would be deductible, referring to allowance of such a deduction as an exception to the general rule "engrafted" by this Court. The taxpayers in Peurifoy v. Commissioner, supra, were construction workers, an occupation similar to that of petitioner herein. The law as to the "temporary" versus "indefinite" test, accepted by the Supreme Court in Peurifoy v. Commissioner, supra, recognizes the established home of a taxpayer as his "home" within the meaning of section 162(a)(2) when he takes temporary work in another city but not when he accepts work for an "indefinite" period. In the latter situation his "home" within the meaning of section 162(a)(2) changes to his principal place of employment when he accepts the work for an indefinite period or when his temporary period of assignment terminates and he becomes an indefinite employee at the new site. If we accept petitioner's contention that his tax home was Lodi, California, when he accepted *238 employment in September 1957 with Parsons to work in Ohio, we nevertheless must determine whether Lodi continued to be his tax home in 1958 and 1959. When petitioner first accepted employment by Parsons, he was on a temporary status at Wright-Patterson Air Force Base pending a determination whether he would be an acceptable employee under Parsons' contract with the Corps of Engineers. The determination that he was acceptable was made in the latter part of 1957 and at that time petitioner's temporary status terminated and he became an indefinite employee. At that time petitioner's "home" became the Dayton, Ohio area. Petitioner argues that his "home" was in Lodi, California at all times from 1944 throughout the years here involved. He calls attention to the facts that he was in Lodi, California, at the time he accepted employment with Parsons, that he owned a house and maintained a home for his family in Lodi, that he and his wife had invested in realty in that area which they held for the production of income, and that Lodi was the place to which he normally returned after his construction assignments were completed and Lodi was the place from which he normally accepted new employment *239 assignments. These facts might well be considered as showing that petitioner was not in that category of workers who "carry their tax homes on their back" and have therefore been denied any deduction for travel expenses under section 162. [2] Certainly these facts do not show that Lodi was petitioner's principal place of business in 1958 and 1959 even if his interests there could be considered as "a business." It may well be that when petitioner first went to Ohio in 1957 he was "away from home" within the meaning of section 162(a)(2). This, however, was in 1957, a year not before us and we therefore express no opinion as to the deductibility of expenses incurred in that year. *240 Accepting petitioner's contention that he was originally employed in 1957 on a stopgap or emergency basis for a period of 90 days to 6 months does not dispose of the issues for the years 1958 and 1959 here involved. After petitioner had been on the job at Wright-Patterson Air Force Base for a short period of time, the situation changed. Through his efforts a very complicated method of construction operation improved and Parsons' liaison with the Corps of Engineers improved immensely. In fact, the parties concerned began to refer to petitioner as the resident manager whereas prior to this time there was some doubt as to his title and responsibilities. The selection of a title for petitioner and the acceptance by the area engineer of petitioner as resident manager in lieu of the resident engineer called for by the contract, shows a change in attitude by all parties concerned and removed any question of petitioner's being replaced because of not being an engineer. At that time petitioner's position became similar to that of any other qualified person employed on the project at Wright-Patterson Air Force Base. His employment was indefinite. In fact petitioner himself recognized this *241 change and thought he would continue with the project on an indefinite basis or until its completion. The project was far from complete at that time because of delays caused by repeated design changes. Before the beginning of 1958 petitioner had demonstrated that he was capable of doing the work the position he was filling called for. He had become an indefinite employee. This Court has previously considered situations in which the status of the employment originally assumed to be temporary had in the years at issue evolved into indefinite. Arnold P. Bark, 6 T.C. 851 (1946), and Floyd Garlock, supra. Petitioner argues that even after it became apparent that he would be employed at Wright-Patterson Air Force Base, as long as a full staff was needed at the site by Parsons and perhaps until completion of the project, his employment was nevertheless temporary. He states that since he was not a permanent employee of Parsons but at most employed for the duration of the contract at Wright-Patterson Air Force Base, which contract the Corps of Engineers was privileged to cancel in order to take over the supervision of the construction with personnel of the Corps, *242 his employment was subject to termination at any time although it, in fact, lasted 28 months. These facts may show that petitioner's employment lacked permanence but do not show that it was temporary as contrasted to indefinite. Peurifoy v. Commissioner, supra; Floyd Garlock, supra; and James R. Whitaker, supra. We conclude therefore that petitioner was not in a temporary status in Ohio during 1958 and 1959 and he was not during those years away from his principal post of duty when living in Fairborn, Ohio. The facts in the instant case make it distinguishable from Harvey v. Commissioner, supra, since petitioner here was employed by Parsons specifically for work in Ohio and not sent to Ohio by his existing employer. Cf. Wright v. Hartsell, 305 F. 2d 221 (C.A. 9, 1962). Petitioner in his brief recognizes this factual distinction. The facts in the instant case are quite similar to those in Peurifoy v. Commissioner, supra. The fact that petitioner received a reimbursement of $1,800 from his employer for living expenses in addition to the amounts called his salary does not establish that such amounts are *243 deductible travel expenses within the meaning of section 162. Darrell Spear Courtney, and Leo C. Cockrell, both supra. Deductibility of such amounts is only proper where the requirements of the statute are met and the classification of the payments as salary or reimbursement by the employer is not conclusive. There is some evidence in the record that petitioner on five or six occasions traveled to Louisville, Kentucky from Wright-Patterson Air Force Base for business purposes while employed by Parsons. There is, however, no showing that petitioner incurred any expenses in connection with these one-day trips. There is therefore no basis in the record to support allowance of any deductions for these trips. We hold petitioner is not entitled to any deduction under section 162(a)(2) for expenses incurred in living in Ohio during 1958 and 1959 and therefore sustain respondent's disallowance of petitioner's claimed deductions for these years. Decision will be entered under Rule 50. Footnotes
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and * * *↩
2. Fisher v. Commissioner, 230 F. 2d 79 (C.A. 7, 1956), an itinerant musician traveled with his family from city to city; Moses Mitnick, 13 T.C. 1 (1949), a manager of theatrical shows who did not have a permanent residence and who traveled with the shows; Mort L. Bixler, 5 B.T.A. 1181 (1927), a manager of fairs who traveled from state to state while maintaining a residence in Mobile, Alabama, had insufficient contacts with Mobile to call it his tax home. Cf. Alois Joseph Weidekamp, 29 T.C. 16 (1957), Rev. Rul. 60-189, 1960-1 C.B. 60↩.