Irving S. Lawrence and Betty L. Lawrence v. Commissioner.
Lawrence v. Commissioner
Docket No. 4458-69 SC.
United States Tax Court
T.C. Memo 1970-235; 1970 Tax Ct. Memo LEXIS 124; 29 T.C.M. (CCH) 1004; T.C.M. (RIA) 70235; August 19, 1970, Filed Irving S. Lawrence, pro se, KPL Tower, Topeka, Kans. John D. Steele, Jr., for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1966 in the amount of $418.25. The following issues are presented for decision: *125 (1) Whether certain outlays claimed as deductions by petitioner Irving S. Lawrence were traveling expenses incurred "while away from home in the pursuit of a trade or business" within the meaning of section 162(a)(2); [1] and (2) Whether petitioner has substantiated deductions claimed for medical expenses and charitable contributions under sections 213 and 170, respectively. Findings of Fact Irving S. Lawrence (hereinafter referred to as petitioner) and Betty L. Lawrence were residents of New Hartford, New York, at the time their petition was filed. Theyiled. They filed a joint Federal income tax return for 1966 with the district director of internal revenue, Buffalo, New York. Petitioner has been employed by the Federal Aviation Administration (hereinafter referred to as FAA) continuously from 1947 to the present. Beginning at least as early as January 1, 1966, and continuing until March 27, 1966, petitioner worked as a Supervisory Air Traffic Control Specialist - Watch Supervisor at Civil Service Grade GS-10. During this period, his *126 post of duty was at Buffalo, New York. He and his family resided in Williamsville, New York. Early in 1966 a vacancy occurred in the staff of the FAA in Millinocket, Maine, for a Supervisory Air Traffic Control Specialist - Facility Chief at Civil Service Grade GS-11. Petitioner applied for the position, received the appointment, and was transferred to Millinocket. The new assignment required an official change of duty station and was to be a permanent, rather than a temporary, assignment. From March 28 to October 26, 1966, petitioner's official post of duty was at Millinocket. When petitioner moved to Millinocket, he left his wife, five children, and a grandson at their home in Williamsville. It was his intention to move his family to Millinocket when suitable housing was found. However, during a continuous six-months search, he was unable to find a residence that was within his means. For this reason he left his family in Williamsville. While stationed in Millinocket, he lived in a rooming house and ate his meals at local restaurants. When petitioner learned that he could not find housing for his family in Millinocket, he requested a reassignment to Utica, New York, and his *127 request was granted. The new job entailed a promotion to GS-12, however, and, since petitioner did not meet the requirements of the Whitten Amendment, which states that a Federal employee must serve one year in grade, his FAA personnel papers were prepared to reflect that he was "detailed" to Utica. The "detail" read in part: [Petitioner] meets all qualifications for promotion to GS-12; however, he does not meet the year-in-grade restrictions of the Whitten Amendment until 3-27-67. Therefore, he is being detailed to the position without per diem and "in lieu of" GS-12 until he becomes eligible for promotion. Petitioner reported to his new post in Utica on November 7, 1966. He expected his stay in Utica to be indefinite or until he received another promotion. In January 1967, while petitioner's personnel papers reflected he was still on detail to Utica, he moved his family to nearby New Hartford, New York. The FAA authorized this move, and, pursuant to an applicable statute, [2] reimbursed him for expenses actually incurred in moving his family from Williamsville to New Hartford. The pertinent statute allows reimbursement for travel and transportation expenses in the case of a *128 Federal employee who is transferred from one official station to another for permanent duty. 1006 In his 1966 Federal income tax return, petitioner claimed deductions in the amount of $1,970, for expenses incurred while away from home in Millinocket and Utica. Petitioner also claimed deductions in the amounts of $295.60 and $257 for medical expenses and charitable contributions, respectively. In the deficiency notice, respondent disallowed the deduction of $1,970 for expenses under section 162; he determined that such expenses were not incurred while away from home. Respondent also disallowed a deduction of $295.60 for medical expenses on the ground that the amount substantiated was not in excess of 3 percent of petitioner's adjusted gross income; and, after noting that the $257 deduction claimed for charitable contributions was unsubstantiated, respondent allowed petitioner $78 for such contributions. Opinion The reasons given by petitioner to support his claim to deductions for the estimated amount of the expenses which he incurred in 1966 for meals and *129 lodging in Millinocket, Maine, and Utica, New York, are not altogether clear. In essence, his position appears to depend upon two asserted facts, i.e., (1) his family remained in Williamsville, New York; and (2) under the FAA personnel procedures, both assignments were characterized as temporary in nature. The relevant provisions of section 162 (a)(2) are as follows: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business; * * * One important factor to be borne in mind in resolving this issue is that the word "home" as used in section 162(a)(2) is a term of art. We explained the guiding principles in Lloyd G. Jones, 54 T.C. 734, 740 (1970): [The word "home"] does not mean the taxpayer's domicile; rather it means his "tax home," i. e., the location of his principal place of business, employment, or station of duty. [Citations omitted.] "The job, not the taxpayer's pattern of living," is the crucial factor. [Citations omitted. *130 ] A taxpayer continues to have his "home" at his regular place of employment if he accepts "temporary employment of short duration" at another location; but if the assignment is of "substantial" or "indefinite" duration, the second location becomes his "home" within the meaning of section 162(a)(2). * * * Thus the location of petitioner's family while he worked in Millinocket and Utica is not crucial. The deductibility of his expenses must turn on the nature and character of his employment assignments. Petitioner contends that his employment in Millinocket was rendered temporary by his inability to locate housing for his family. By his own admission petitioner's duty assignment to Millinocket was intended to be an indefinite one, however, and he did not accept the post subject to any conditions. [3]
*131 Indeed, the FAA appears to have so characterized the assignment at the time of the transfer to Millinocket, for it authorized him to move his family there. Petitioner would have us conclude that the assignment was "temporary" because FAA did not pay him for any moving expenses between Williamsville and Millinocket. However, FAA's failure to reimburse him for any expenses for his move to Millinocket was due to the simple fact that he incurred none. The lack of housing for his family in Millinocket is petitioner's only basis for challenging the permanency of his assignment to that city; and it cannot be said that a taxpayer working at the location of a permanent or indefinite assignment is "away from home" merely because it is not financially feasible for his family to reside there with him. Cf. Commissioner v. Stidger, 386 U.S. 287, 296 (1967). There is no merit in petitioner's contention that his employment at Utica from November 7, 1966, to December 31, 1966, was temporary because the FAA designated 1007 the assignment as a detail. The FAA's characterization of petitioner's official duty station is not determinative of the location of his tax home. Cf. Floyd Garlock, 34 T.C. 611, 616 (1960). *132 That designation relates solely to the administrative procedures within that agency; it affects the determination of his home for the purposes of section 162(a)(2) only to the extent that the designation sheds light on the character of the assignment in terms of whether it was permanent, indefinite, or temporary. The record is unmistakably clear that the Utica assignment was indefinite [4] and that the assignment was designated as a detail only because of the exigencies of the Whitten Amendment. We hold that petitioner's assignments during 1966 while living in Millinocket and Utica were intended to be of indefinite duration. These two posts were his tax homes and the expenses incurred while living there were "personal" expenses and not deductible under section 162(a)(2). See Peurifoy v. Commissioner, 358 U.S. 59 (1958); Lloyd G. Jones, supra. The only dispute concerning the issues of the medical expenses and the charitable contributions is whether these items have been substantiated. Petitioner *133 had lost all his records with respect to these items and attempted to supply the needed substantiation through his oral testimony. Cross-examination revealed, however, that he had presented to the revenue agents certain materials in substantiation of his medical expenses which reflect expenditures only in the amount which respondent allowed. At the trial his testimony was vague and consisted almost exclusively of generalized estimates. The burden of proof, of course, rested with petitioner. Rule 32, Tax Court Rules of Practice; Welch v. Helvering, 290 U.S. 111 (1933). On this record we cannot find that he incurred medical expenses in excess of the 3 percent limitation prescribed by section 213 or that he made contributions in a greater amount than has already been allowed. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
2. 5 U.S.C. sec. 5724(a)↩, as amended by Pub. L. 89-516 approved July 21, 1966, 80 Stat. 323.
3. Petitioner testified as follows: Q. Now, was this Millinocket assignment a temporary assignment or what were the circumstances in which you were asked to go to Millinocket? A. It would have been a permanent assignment under normal circumstances. Q. What kept it from being a normal circumstance? A. * * * There were no houses for rent. And the cost of any suitable residence was well beyond my ability to purchase a home. * * * Q. Well, did you make any inquiries concerning the availability of residences before you accepted the assignment at Millinocket? A. No.↩
4. Petitioner testified as follows: Q. How long did you expect to stay in Utica? A. Well, indefinitely or until I got another promotion or another job.↩