LINWOOD E. TOPPING, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Topping v. Commissioner
Docket No. 502-76.
United States Tax Court
T.C. Memo 1976-342; 1976 Tax Ct. Memo LEXIS 65; 35 T.C.M. (CCH) 1568; T.C.M. (RIA) 760342; November 10, 1976, Filed Linwood E. Topping, pro se. Mathew E. Bates, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1973 in the amount of $695. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision only whether petitioner is entitled to a deduction under section 162(a), I.R.C. 1954, [1] of amounts expended for traveling expenses while employed away from the place where he maintained his family residence and if so the amount, if any, which is properly deductible as transportation expenses. *66 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, an individual whose legal residence at the time of the filing of the petition in this case was Littleton, North Carolina, filed a joint Federal income tax return with his wife for the calendar year 1973 with the Memphis Service Center, Memphis, Tennessee. Petitioner had been engaged in work as a pipefitter on construction projects for a number of years prior to 1973. He had lived most of his life in Littleton, North Carolina. In 1966 he was maintaining a home for his family in Littleton, North Carolina when he obtained work as a pipefitter on a project in Massachusetts. The supervisor of his work in Massachusetts assured petitioner that he would remain on the project on which he was employed in Massachusetts as long as the project lasted. Therefore, after petitioner had been on the project for 6 months, he moved his family to Massachusetts and he lived in Massachusetts with his family while working on that project for 30 additional months. He was a member of Local 77 of the Pipefitters Union in New Bedford, Massachusetts. In 1969, when his work terminated on the project *67 in Massachusetts, petitioner moved his family back to Littleton, North Carolina. He then began seeking work in union halls in Richmond, Virginia and Durham, North Carolina on the basis of his membership in Local 77 of the Pipefitters Union. Work sought in this manner is referred to in the trade as being sought on a "travel card." The first work petitioner obtained in 1969 after returning from Massachusetts was for Grenel Corporation in Franklin, Virginia which was between 40 and 50 miles from Littleton, North Carolina. Petitioner worked on this project in Franklin, Virginia until about March of 1970 and commuted to and from work each day from his home in Littleton, North Carolina. When his work in Franklin terminated because the project there was close to being finished, petitioner found work in Surry, Virginia which was not close enough to Littleton, North Carolina for him to commute daily. Petitioner found quarters near the project in Surry where he stayed during the week and returned to Littleton on weekends. He worked on the project in Surry until May of 1971 when he obtained work for a company in Richmond, Virginia where he stayed for approximately 1 month. In June of *68 1971 when the work on that project terminated, he obtained work at another location near Richmond, Virginia for the period from June 1, 1971, to August 1971 when the project on which he was working was completed. He again obtained work through the Richmond union, Local 10, with Morrison-Knudsen in Williamsburg at the Budweiser Brewery Plant and worked there from August 1971 through January 1972 when the brewery plant was completed. From February of 1972 until late April of 1972 petitioner was unemployed but was seeking work through the Richmond and Newport News, Virginia and Durham, North Carolina locals of the Pipefitters Union. On or about April 28, 1972, petitioner began work as a pipefitter on the construction of a nuclear power plant in Louisa County, Virginia. Construction on the project in Louisa County had been underway for several months when petitioner obtained a referral to that job through the Richmond local union. The first referral petitioner obtained for work on the nuclear power plant in Louisa County was on the dam. The dam was nearing completion at the time petitioner commenced his work there and petitioner worked there for 8 or 9 weeks until approximately the *69 end of June 1972. Petitioner again contacted the business agent at the union hall of Richmond Local 10 and obtained approval to go to the main project of the nuclear power plant which was approximately 10 miles from the dam for work assignment when the dam was finished. Around the first of July 1972 petitioner began working at the main nuclear power plant project. From July 1 until May 1, 1973, petitioner worked on the nuclear power plant project in Louisa County, Virginia. At the time petitioner commenced working on the nuclear power plant in Louisa County it was generally known that the project would require a number of years for completion. However, petitioner overheard rumors from other employees that the work on the plant might be closed down before the plant was completed because of the possibility of earthquake potential in the area. Petitioner's termination on the project on May 1, 1973, was caused by curtailment of work due to a strike by crane operators. Since petitioner was assigned to work from another union on a "travel card" rather than as a member of the Richmond union, Local 10, it was understood that if work were curtailed he, along with other "out-of-towners, *70 " would be the first to be terminated and the persons assigned to the project who were members of the local union would be kept. There were a number of pipefitters employed at the nuclear power plant who were members of unions other than Local 10 in Richmond. However, the termination on May 1, 1973, was extensive and not only of "out-of-towners." After petitioner's work on the nuclear power plant was terminated on May 1, 1973, he began to seek work on other projects. He heard of a project near Salem, New Jersey which needed people to work as pipefitters. He went to Salem and obtained a referral to this project through the local union in that area. Before he had gone to the work project with his referral he learned from an acquaintance that pipefitters were being rehired on the nuclear power plant project in Louisa County, Virginia. Instead of accepting work on the project near Salem, which was over 800 miles from Littleton, North Carolina, petitioner went back to the union hall in Richmond, Virginia and obtained a referral back to the nuclear power plant project in Louisa County, Virginia. Petitioner inquired as to the likelihood of the length of time his work as a pipefitter *71 on the nuclear power plant in Louisa County might continue, and the business agent in the Richmond local union hall told him that he did not know and that there might be another layoff within a week and yet there might not be. Petitioner decided to accept the work on the nuclear power plant in Louisa County, Virginia and was rehired on the project approximately the middle of May 1973. Petitioner continued working at that project until August 1974 when construction was halted due to lack of funds. At the time construction was halted, there still remained work to be done before the nuclear power plant was completed. After being terminated on the nuclear power plant project in August of 1974, petitioner again obtained employment through Union Local 10 in Richmond in the Richmond area and worked on several different projects in that area. During the year 1973 petitioner spent 220 nights and days in Louisa County, Virginia working on the nuclear power plant project. The project was located 172 miles from Littleton, North Carolina and petitioner spent the weekends in Littleton with his family during the time he was working on the project in Louisa County. He would drive his automobile *72 from Louisa County to Littleton generally after work on Friday and return on Sunday night or early Monday morning. Petitioner spent $8 a day for the 220 days he was in Louisa County, Virginia for meals and lodging, making a total of $1,760. During 1973 petitioner, as were all other pipefitters on the nuclear power plant project in Louisa County, Virginia, was paid $6 a day as "travel expenses" in accordance with the agreement in the union contract with the employer. The total amount petitioner was paid as such travel expenses during the year 1973 was $1,386. This amount was included by petitioner's employer along with petitioner's wages on the Form W-2 furnished to petitioner by his employer. Petitioner, on his Federal income tax return for 1973, claimed a deduction of $3,146 in connection with his employment which he explained as follows: Construction Workers Expenses
Allowed by Employer & Shown on W-2
Transportation
$1,386.00
220 Days & Nights Away From Home
Overnights at $8.00
1,760.00
$3,146.00
Respondent in his notice of deficiency to petitioner increased petitioner's reported taxable income by $3,146 with the explanation that the deduction *73 claimed by petitioner as transportation and travel expenses was not allowable. OPINION Section 162(a)(2)[2] provides for deduction as an ordinary and necessary business expense of traveling expenses while away from home in the pursuit of a trade or business. As was held in Commissioner v. Flowers,326 U.S. 465 (1946), in order to qualify for the deduction provided for in section 162(a)(2) a taxpayer must show (1) that the amounts expended were ordinary and necessary, (2) that the expenses were incurred while he was "away from home," and (3) that the expenses were incurred in pursuit of the taxpayer's trade or business. Respondent here does not question the reasonableness of the $8-a-day expenses petitioner claimed for meals and lodging while in Louisa County, Virginia, but rather contends that petitioner was not "away from home" within the meaning of section 162(a)(2). *74 The determination of whether petitioner was "away from home" would control whether the amounts were expended by petitioner in pursuit of a trade or business. Obviously, the amounts were expended for petitioner's living expenses while at his job site and, if petitioner was "away from home" in pursuit of a trade or business when he was at that job site, the expenses were in pursuit of his trade or business. However, if petitioner is not considered to be "away from home" within the meaning of section 162(a)(2), then, as pointed out in Commissioner v. Flower,supra, his residence was maintained in Littleton, North Carolina because of his personal desires and not through necessity of his business. It is clear on this record that at the time petitioner went to the Louisa County, Virginia project his home was in Littleton, North Carolina. That was where his family lived and since returning to Littleton in 1969 petitioner had not, prior to 1972, had nontemporary employment outside the Littleton, North Carolina commuting area. Therefore, under our holding in Hollie T. Dean,54 T.C. 663, 667 (1970), in early 1972 petitioner's home within the meaning *75 of section 162(a)(2) was at Littleton, North Carolina. The real question here is whether prior to the year 1973 petitioner's "home" within the meaning of section 162(a)(2) was changed from Littleton, North Carolina to Louisa County, Virginia. This Court has consistently held that "home" within the meaning of section 162(a)(2) is equated to the principal place of employment of a taxpayer even though his personal residence may be located in a different place. Ronald D. Kroll,49 T.C. 557, 561-62 (1968). We have, however, consistently recognized that a taxpayer's principal place of employment is not his "home" within the meaning of section 162(a)(2) if his employment at a place other than where he maintains his residence is "temporary" as distinguished from "indefinite" or "indeterminate." Emil J. Michaels,53 T.C. 269, 273 (1969), and cases there cited. Generally speaking, if the assignment of a taxpayer away from his residence is for a fixed period of time the assignment may be considered temporary, but if after the conclusion of such fixed period the taxpayer takes employment which is indefinite the new place of employment becomes his "home" *76 for purposes of section 162(a)(2). See Emil J. Michaels,supra;Kermit L. Claunch,29 T.C. 1047 (1958), affd. 264 F.2d 309 (5th Cir. 1959). As we pointed out in the Claunch case, at 1052, where the employment at a particular site is not for a stated period it can be classed as temporary only if its termination within a reasonably short period can be foreseen. See also Beatrice H. Albert,13 T.C. 129 (1949), from which we quoted in the Claunch case. Under the criteria we have laid down for determining the distinction between "temporary" and "indefinite" employment, we conclude on the basis of the facts here present that petitioner's employment in Louisa County, Virginia was indefinite in 1973.Certainly when petitioner first went to Louisa County to work on the dam site his employment was temporary. That project was near completion and, as petitioner testified, it was clear that the dam would be completed in a reasonably short period of time. However, when petitioner took an assignment around July 1, 1972, on the main project, there was nothing to indicate that his employment would be terminated within *77 a reasonably short period. As petitioner pointed out, there were rumors that because of fear of earthquakes work on the plant might be stopped, but there was no indication when, if ever, this might occur. Therefore, there is no basis in this testimony of petitioner to conclude that his work at the Louisa County project might terminate within a reasonably short period. Petitioner testified that the project was one that would be of long duration. He also testified that no person in a position of authority ever told him the length of time he might expect to be employed on the project. The possibility that the project might be terminated because of environmental conditions was merely rumor. Petitioner's other contention is that since he was assigned on a "travel card" as an out-of-towner he would be in the first group of pipefitters to be terminated. However, as petitioner stated, there were a number of out-of-towners on the project and the project required the services of a large number of pipefitters. The fact that petitioner might be terminated sooner than some other pipefitter in no way indicated that petitioner's employment could reasonably be anticipated to be of short duration. *78 Also, as pointed out in Kermit L. Claunch,supra, the fact that petitioner's employment at Louisa County, Virginia, which covered over 2 years, was interrupted by one strike of another union does not change the indefinite nature of that employment to temporary. In fact, petitioner's employment in Louisa County, Virginia continued until August 1974 when construction on the project was halted not due to the completion of the project but due to lack of funds. Petitioner himself in his testimony and in his argument at the trial never truly contended that he could foresee at any time after he began working on the main project a termination of his work there in a reasonably short period of time. Rather he took the position that since he had no assurance of how long he might be employed at the Louisa County project, he could not reasonably be expected to move his family from the home he maintained for many years in Littleton, North Carolina. He argued that because he did not know how long he would be working in Louisa County, Virginia he could not reasonably be expected to move his family to Louisa County. Petitioner's situation has a sympathetic appeal, and in *79 fact the dissenting opinion of Mr. Justice Douglas in Peurifoy v. Commissioner,358 U.S. 59 (1958), affirming the opinion of the Court of Appeals for the Fourth Circuit (254 F.2d 483 (1957)) which had reversed this Court (27 T.C. 149 (1956)), pointed out the problem to which petitioner refers in the following language (at 62): These construction workers do not have a permanent locus of employment as does the merchant or factory worker. They are required to travel from job to job in order to practice their trade. It would be an intolerable burden for them to uproot their families whenever they change jobs, if those jobs happen to take them to a different locality. When they do not undertake this burden they are living "away from home" for the duration of the term of the jobs. [Footnotes omitted.] However, the majority of the Court in the Peurifoy case affirmed the holding of the Fourth Circuit that the taxpayers in that case were not entitled to a deduction for traveling expenses while away from home since their employment at the construction sites where they were working was indefinite or indeterminate rather than temporary. *80 Therefore, since we conclude that the facts here clearly show that after July 1, 1972, petitioner's employment at the Louisa County construction site was indefinite or indeterminate, we hold that petitioner was not away from home when in Louisa County, Virginia within the meaning of section 162(a)(2). Petitioner at the trial called the attention of the Court to a Memorandum Opinion of this Court, [3] which involved a crane operator working on the same Louisa County, Virginia project on which petitioner was working. In that case we concluded as a matter of fact that the taxpayer's work on the project was temporary rather than indeterminate or indefinite. In reaching the conclusion that the crane operator's employment was temporary rather than indefinite, we distinguished such cases as Floyd Garlock,34 T.C. 611 (1960), by pointing out that the taxpayer had been informed that his work would not last for the duration of the project because it was customary for crane operators to have short assignments even on projects of long duration.We further pointed out that the year involved covered the first tax year during which the taxpayer had worked at the project. During *81 that year he had worked for one subcontractor only a little over a month when he went to work for another subcontractor at the same site. He was assigned a crane with the understanding that when that crane was no longer needed the taxpayer's work would be terminated even though the project continued. It developed later that the taxpayer's crane was shut down four or five times and he was able to move to a new crane where a vacancy had arisen. However, we concluded this fact could not reasonably have been anticipated in the year before us. Finally we stated that it could be argued that at some point the taxpayer's employment changed from temporary to indefinite, but the change did not occur during the year there involved. The factual differences in this case and those in the case petitioner relies upon make the cases distinguishable. We sustain respondent's disallowance of petitioner's claimed deductions of travel expenses while away from home during the year 1973. Because of concessions made with respect to other issues, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, unless otherwise stated.↩
2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
3. Clifton R. Barkley,T.C. Memo. 1976-159↩, filed May 20, 1976.