RICHARD AND ELIZABETH FISHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fisher v. Commissioner
Docket No. 720-77.
United States Tax Court
T.C. Memo 1979-191; 1979 Tax Ct. Memo LEXIS 329; 38 T.C.M. (CCH) 807; T.C.M. (RIA) 79191; May 17, 1979, Filed Richard Fisher, pro se. George Mac Vogelei, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and *330 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined deficiencies of $55.47 and $397, respectively, in petitioners' 1973 and 1974 federal income taxes. At issue is whether petitioners are entitled to deductions under section 162 for certain transportation and meals expenses incurred by petitioner Richard Fisher. FINDINGS OF FACT Some facts have been stipulated, and they are so found. Petitioners, husband and wife, resided at Silver Springs, Nevada, at the time the petition herein was filed. They timely filed their joint federal income tax returns for the years 1973 and 1974 with the Internal Revenue Service at Reno, Nevada. During the years in issue, petitioners lived *331 on a ranch of some 100 or 120 acres at which they raised, boarded, and sold horses. On their federal income tax return for 1973, they reported sales of 9 horses for an aggregate amount of $3,058. The net gain from these sales was $425. They reported other income from the ranch in the amount of $887.20 and a net loss from ranching of $9,850.65. On their 1974 return, they reported a gain of $510 from sales of 2 horses for an aggregate of $900. They reported other ranching income of $1,171 and a net loss of $9,542 from the ranch. Petitioner Elizabeth Fisher did all of the bookkeeping for the ranch. Petitioners' tax returns for 1973 and 1974 each report their occupations as musician and PBX operator. In 1973, Richard earned $14,641.60 in wages and Elizabeth earned wages of $1,095.23 from part-time employment. In 1974, Richard's income from wages was $13,541.60 and Elizabeth's was $4,691.27. Richard's wages were almost entirely from his occupation as a musician with the Joseph Rossi Orchestra. Richard has performed as a musician for many years. In 1973 and 1974, he was employed as a relief orchestra musician with the Joseph Rossi Orchestra. He began working with the relief orchestra *332 in 1972. The relief orchestra performed at various hotels and clubs in Reno, Sparks, and Lake Tahoe, Nevada, on nights when the regular house band was off. Reno and Sparks are 9 miles apart and each is about 60 miles from petitioners' residence in Silver Springs. Lake Tahoe is approximately 40 miles from Reno and, again, it is about 60 miles from petitioners' residence to each of the places at which Richard performed at Stateline and Incline Village, on the south and north shores of Lake Tahoe, respectively. Richard drove his car to work and home again on the occasion of each engagement. [3] He was reimbursed at the rate of 6 cents a mile for his transportation from his residence to each engagement. On a normal work day, Richard played a dinner show and a cocktail show. The dinner show began at 8:00 p.m. and the cocktail show at midnight.Each show lasted approximately an hour and a half. He had a break of approximately *333 two hours between shows. His work day ended at about 1:30 a.m. Some work days included a rehearsal as well as the evening performances. On those days, Richard reported for the rehearsal at 1:00 p.m. The rehearsal lasted from 2 to 4 1/2 hours. During the break between the rehearsal and the 8 o'clock show, he ate and relaxed. Each club provided a band room for the musicians to store their instruments and equipped with couches, chairs, a television receiver, and other amenities for relaxing between shows. In 1973, Richard worked 71 days which included rehearsals and a total of 144 days as a relief musician. In 1974, Richard worked about 135 days as a relief musician, of which 62 included a rehearsal. He deducted $2,005.20 for transportation expenses in 1973 and $1,359 in 1974. He deducted $1,008 for meals in 1973 and $1,130.50 in 1974. [4] Respondent disallowed all of the claimed transportation and meals expenses.
OPINION Petitioners maintain that Richard's transportation and meals expenses *334 are deductible under section 162(a)(2). [5] Richard insists that his ranch in Silver Springs was his principal place of business (although he gives his occupation as "muscian" on his tax returns). He argues that it follows that his transportation and meals expenses are deductible because they were incurred while he was traveling temporarily away from the ranch in pursuit of a trade or business. As far as the meals are concerned, it is clear that Richard does not meet the "sleep or rest" requirement of United States v. Correll,389 U.S. 299, 302-304 (1967). In that case the Supreme Court held that the phrase "away from home" as contained in section 162(a)(2) excludes all trips requiring neither sleep nor rest. This rule "is particularly aimed at formulating an objective test which will obviate individual analysis of countless factual variations. *335 " Barry v. Commissioner,435 F.2d 1290, 1291 (1st Cir.), affg. per curiam 54 T.C. 1210 (1970). The term "sleep or rest" as used in Correll relates to periods for which it is normal to incur a significant increase in expenses (other than the mere additional cost of meals eaten out, which every commuter incurs). Barry v. Commissioner,supra.It does not embrace the periods between rehearsal and his first performance of the evening or between performances during which Richard relaxed in the band rooms here. In the Barry case, the taxpayer made one-day business trips requiring 16 to 19 hours (longer than Richard was away from his residence), during which he generally rested once or twice briefly in his automobile. He always returned home at night and (as Richard) spent no money for rest or lodging facilities on any of the trips. In affirming our holding that the cost of meals taken on those trips was nondeductible, the First Circuit stated: The [sleep or rest] rule requires a stop of sufficient duration that it would normally be related to a significant increase in expenses. Even assuming that there might be instances *336 in which this could be less than overnight, a matter on which we intimate no view, clearly taxpayer did not meet this requirement by catnapping in his automobile. [435 F.2d at 1291.] Richard's expenditures for meals were nondeductible personal expenses under section 262. [6]
The transportation expenses involved present a closer question. Nevertheless, we believe the result here is governed by Smith v. Warren,388 F.2d 671 (9th Cir. 1968). In that case the taxpayer was a harbor pilot who traveled in the Puget Sound area between his residence and various ports located from one hundred miles north to sixty miles south of Seattle. The Ninth Circuit upheld the finding that the expenses of that travel were nondeductible commuting expenses. We cannot treat Richard otherwise. We find that the ranch was Richard's secondary place of business under the criteria set forth in Markey v. Commissioner,490 F.2d 1249, 1255 (6th Cir. 1974). Although he actually performed as a musician on only 37 to 39 percent *337 of the days in the years at issue, his life long work in that field and the fact that he derived the greater amount, by far, of his income from his work as a musician in the years before us persuade us that his employment with the Joseph Rossi Orchestra was his primary business in these years. Further, Richard's testimony as to the extent that he as opposed to Elizabeth worked the ranch is vague and somewhat confusing. In this regard he generally used the first person plural pronoun and failed to distinguish between their activities. Elizabeth's efforts in ranching are not relevant to the determination of Richard's principal place of business. Foote v. Commissioner,67 T.C. 1 (1976). [7]
Inasmuch as we find that Richard's principal employment was as a musician with the Joseph Rossi Orchestra, his place of principal employment was the area in which were located the various clubs and hotels to which he was subject to being assigned and we *338 hold that the costs of his travel from his residence to any point of assignment and return constituted nondeductible commuting expenses. See, also, Garlock v. Commissioner,34 T.C. 611, 616 (1960); Heuer v. Commissioner,32 T.C. 947, 952 (1959), affd. 283 F.2d 865 (5th Cir. 1960) (per curiam). As we said in Heuer,supra at 952: True, this was a large area and involved over 100 possible points of assignment, and the petitioner was subject to assignment at all hours; nevertheless, the petitioner's costs of travel from his residence to any point of assignment and return cannot, in our opinion, properly be considered as expenses paid or incurred in the carrying on of his trade or business. Rather, they were personal expenses incurred in traveling to and from the site of his work. The fact that Richard conducted a secondary business at the place of his residence does not convert his commuting expenses into deductible business expenses. Mazzotta v. Commissioner,57 T.C. 427 (1971), affd. 465 F.2d 1399, 467 F.2d 943 (2d Cir. 1972) (per curiam). Richard did not travel from one place *339 of assignment to another during the course of a working day. Compare Chandler v. Commissioner,226 F.2d 467 (1st Cir. 1955), revg. 23 T.C. 653 (1955); Heuer v. Commissioner,supra.We find his argument that because his work spanned two calendar days (in that it began before and ended after midnight) he often worked at two locations on "the same day" to be wholly lacking in merit. The fact remains that his travel in every instance was motivated by his personal desire to be at home when he was not engaged in performing his job as a musician, not by business considerations. * * *
In accordance with the foregoing opinion, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Richard was paid for some engagements on which he stood by at his residence to perform in the event that he was needed. If he was not called, he did not drive to the place of the engagement and incurred no transportation or meals expenses on those occasions.↩
4. The parties have stipulated that, should we decide that petitioners are entitled to a deduction for Richard's meals, they may deduct $7.00 per meal in 1973 and $8.50 per meal in 1974.↩
5. There shall be allowed as a deduction all the ordinary and necessary expenses incurred during the taxable year in carrying on any trade or business, including-- * * *
(2) traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business * * *.↩
6. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
7. We expressly do not decide (because the issue was not presented, argued, or briefed by any of the parties) whether Elizabeth's transportation between the ranch and the location of her part-time employment is deductible.↩