WALTER L. CLARK AND ELIZABETH E. CLARK, ET AL., Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent [1]
Clark v. Comm'r
Docket Nos. 4640-81, 5015-81, 5016-81, 5186-81, 7244-81, 8232-81, 9975-81. United States Tax Court
T.C. Memo 1983-460; 1983 Tax Ct. Memo LEXIS 328; 46 T.C.M. (CCH) 964; T.C.M. (RIA) 83460; August 8, 1983. *328 Held, the employment of petitioners, who are construction workers, at the site of a nuclear plant was indefinite, rather than temporary. Accordingly, deductions for transportation expenses and away from home traveling expenses under section 162(a)(2) are denied. Ford P. Mitchell, for the petitioners. Cynthia M. Odle-Schlechty, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: In these consolidated cases respondent determined the following Federal income tax deficiencies: Income Tax
Docket No.
Petitioners
Year
Deficiency
4640-81
Walter L. Clark
1977
$947.00
and Elizabeth E.
1978
875.00
Clark
1979
720.00
5015-81
Henry P. Snyder
1979
567.61
5016-81
Michael A. Moody
1979
671.00
and Jessie S.
Moody
5186-81
Paul W. Burnette
1978
697.00
and Pauline
1979
728.00
Burnette
7244-81
William H. Elliott, Sr.
1977
1,359.33
and Barbara C.
1978
1,378.66
Elliott
8232-81
Joe D. Dunlap
1978
476.00
and Katherine
Dunlap
9975-81
Ronald E. Pelfrey
1977
468.00
and Anna S.
1979
900.58
Pelfrey
*329 The petitioners in the first docket and the last five dockets are husband and wife, the wives being petitioners solely by reason of having filed a joint return; therefore the term petitioner(s) will hereafter refer only to petitioner husband(s), and to the remaining petitioner in docket No. 5015-81. The sole issue for decision is whether petitioners' employment at a construction site was temporary rather than indefinite, so that petitioners Clark, Snyder, Moody, Burnette, Dunlap, and Pelfrey may deduct the cost of transportation between their respective residences and their job site under section 162 [2] and petitioner Elliott may deduct transportation and travel expenses under section 162. [3]
*330 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. All petitioners filed Federal income tax returns for the years in issue with the Internal Revenue Service Center, Memphis, Tennessee. All petitioners resided in Tennessee at the time of filing their petitioners herein. Sometime in 1972, work commenced in Spring City, Tennessee, [4] on the construction of the Watts Bar Nuclear Plant (hereinafter sometimes referred to as Watts Bar) by the Tennessee Valley Authority (TVA). It requires a minimum of 10 years, and may require as long as 15 years, to build a nuclear plant like Watts Bar. As of February 2, 1982, the date of trial, construction of the plant was continuing. Each of the petitioners has been employed at the plant site during the periods indicated below: Clark
May 14, 1975 - April 19, 1976
May 4, 1976 - April 18, 1977
May 3, 1977 - April 17, 1978
May 3, 1978 - Date of Trial
Snyder
June 30, 1975 - June 11, 1976
June 29, 1976 - December 9, 1976
December 13, 1976 - November 23, 1977
December 13, 1977 - Date of Trial
Moody
May 10, 1977 - April 24, 1978
May 10, 1978 - Date of trial
Burnette
February 7, 1973 - February 5, 1974
February 20, 1974 - February 5, 1975
March 5, 1975 - February 17, 1976
March 3, 1976 - February 15, 1977
March 2, 1977 - February 14, 1978
March 1, 1978 - Date of Trial
Elliott
March 30, 1976 - March 11, 1977
March 29, 1977 - March 9, 1978
March 28, 1978 - August 11, 1980
Dunlap
July 13, 1976 - June 24, 1977
July 12, 1977 - June 26, 1978
July 17, 1978 - Date of Trial
Pelfrey
April 4, 1977 - July 27, 1977
August 1, 1977 - July 13, 1978
July 28, 1978 - Date of Trial
*331 Throughout their respective periods of employment at Watts Bar listed above, petitioners Clark, Burnette, Elliott, and Dunlap, were employed as a painter, a carpenter, a steamfitter, and an unclassified laborer, respectively. Petitioner Snyder was employed as an unclassified laborer until December 9, 1976, when he became a steamfitter. Petitioner Moody was employed as an electrician apprentice until August 7, 1981, when he became an electrician. Petitioner Pelfrey was employed as a laborer until August 1, 1977, when he became a steamfitter apprentice. As of the date of trial, petitioner Clark had been a resident of Rockwood, Tennessee, for 22 years and had owned his residence there for the same length of time. Petitioner Clark raised cattle during 1977, 1978, and 1979 on a farm he owns in Rockwood. His wife's parents have been residents of Rockwood for their entire lives. The Clarks' residence is approximately 32 miles from Watts Bar. During 1977, 1978, and 1979, petitioner Clark drove his automobile to and from work each day. Petitioner Snyder had been a resident of Athens, Tennessee, for approximately *332 25 years as of the date of trial. During 1979, his family lived in Athens. Petitioner Snyder's residence in 1979 was approximately 30 miles from Watts Bar. During 1979, petitioner Snyder drove his automobile to and from work each day. As of the date of trial, petitioner Moody had been a resident of Lenoir City, Tennessee, for 15 years and his parents resided there. He attended high school for three years in Lenoir City and considers Lenoir City to be his home town. His wife was born in Lenoir City and his wife and children lived there with him in 1979. Petitioner Moody's residence in Lenoir City is approximately 45 miles from Watts Bar. During 1979, petitioner Moody drove his automobile to and from work each day. As of the date of trial, petitioner Burnette had been a resident of Kingston, Tennessee, for 55 years and had owned his residence there for 36 years. Since 1976, petitioner Pauline Burnette had been employed at the City & County Bank of Roane County, Kingston, Tennessee. Petitioner Burnette's residence was approximately 28 miles from Watts Bar. During 1978 and 1979, petitioner Burnette drove his automobile to and from work each day. Petitioner Elliott *333 has been a resident of the same area of Tennessee for his entire life. He has several children. Two of petitioner Elliott's children were in high school in Clinton, Tennessee, when he began working at Watts Bar. In 1976, the Elliotts lived in Clinton, Tennessee. After petitioner Elliott began working at Watts Bar, the Elliotts bought a double wide trailer and some land by a lake near Oak Ridge, Tennessee. They permanently located the trailer on the land and were residing there as of the date of trial. At trial petitioner Elliot stated that he hoped to reside there for the rest of his life.Since 1960 petitioner Barbara C. Elliott has been employed as a registered nurse at the Oak Ridge Hospital, Oak Ridge, Tennessee. When he began working at Watts Bar, petitioner Elliott bought a 31-foot travel trailer and set it up near the construction site. During 1977 and 1978, he lived in the trailer during the work week and went to Clinton on weekends to be with his family. For quite a while, petitioner Elliott worked 7 days a week at Watts Bar and was on the third shift. The Elliotts' residence in Clinton was approximately 45 miles from Watts Bar. Petitioner Elliott's employment at *334 Watts Bar Terminated, at his request, on August 11, 1980, when he left to look for work closer to his family's residence. Petitioner Dunlap's parents have been residents of Oliver Springs, Tennessee, for approximately 65 years. Petitioner Dunlap has resided in Oliver Springs since his birth. Since 1974, petitioner Katherine M. Dunlap has been employed at the Oak Ridge National Laboratory, Oak Ridge. Oak Ridge is between 3-1/2 and 4 miles from Oliver Springs. Petitioner Dunlap's residence is approximately 50 miles from Watts Bar. During 1978, petitioner Dunlap drove his automobile to and from work each day. In February or March 1977, approximately one or two months before petitioner Pelfrey became employed at Watts Bar, the Pelfreys acquired a house in Rockwood, Tennessee. Since they had just acquired the house, they did not wish to sell it and move to Spring City when petitioner Pelfrey became employed at Watts Bar. As of the date of trial, the Pelfreys had resided in Rockwood approximately 4-1/2 years. The Pelfreys' residence in Rockwood was approximately 30 miles from Watts Bar During 1978 and 1979, petitioner Pelfrey drove his automobile to and from work each day. *335 The TVA hires construction workers through the local unions. The TVA tells the local unions how many employees are needed for a construction project and the local unions then assign the number of employees requested to the project. The local unions in Chattanooga, Tennessee, had jurisdiction over the construction jobs at Watts Bar. During the years 1975 through 1978, the Chattanooga locals were unable to supply all the steamfitters and electricians needed for work at Watts Bar. The union agents of the steamfitters' and electricians' locals in Chattanooga, therefore, occasionally had to recruit qualified individuals from other areas. If there are rumors that members of the locals having jurisdiction over the jobs at a construction site are to be laid off, those locals having jurisdiction may ask employees who are not affiliated with them to resign from their jobs, so as to permit members of the locals having jurisdiction to retain their jobs. The employees who are asked to resign may do so voluntarily, as a courtesy, but are under no obligation to resign. Petitioners Clark, Snyder, Moody, Dunlap, and Pelfrey have been affiliated with the local unions for their respective *336 crafts in Chattanooga during their employment by the TVA at Watts Bar. Petitioner Burnette was affiliated with Carpenters Local 50, Knoxville, Tennessee, until sometime between March 5, 1975, and March 3, 1976, when he became affiliated with Carpenters Local 74, Chattanooga, Tennessee. Petitioner Elliott was affiliated with Steamfitters Local 102, Knoxville, Tennessee, while he was employed at Watts Bar. Petitioner Elliott has been affiliated with Knoxville Local 102 for approximately 30 years and, unlike some of the other petitioners herein, did not wish to change his affiliation to the Chattanooga local during his employment at Watts Bar. From 1974 through October 1978 the type of appointment that was in effect for all construction workers at Watts Bar was a "trades and labor temporary construction hourly" appointment not to extend beyond 11 months and 29 days from the first day of the appointment (hereinafter referred to as 11-29 appointment). Pursuant to the 11-29 appointments, TVA specified a date not beyond 11 months and 29 days from the inception of each construction worker's employment as the date of the termination of his employment. The 11-29 appointments, however, *337 did not guarantee the construction workers that they would be employed a specific amount of time. The length of each construction worker's employment depended entirely on the TVA's need for workers in his particular craft. By hiring construction workers on a temporary basis, that is for a period of less than one year, TVA was able to lay them off at any given time and thereby temporarily decrease the number of its employees. TVA is an agency of the United States Government and at times was required by the Office of Management and Budget (hereinafter referred to as OMB) or a presidential directive to comply with certain employment ceilings. TVA officials were of the view that construction workers hired under 11-29 appointments who were laid off on a date when OMB or a presidential directive required a count of the number of TVA employees could be excluded from the count. While the 11-29 appointments were in effect, each temporary construction worker's employment was terminated on its stated termination date for a period of appoximately 10 days. After that brief termination period, the employee generally was reemployed. The probability of reemployment depended upon the employee's *338 craft. For example, from 1975 through October 1978, the chances of reemployment were at least 80 percent for steamfitters, at least 50 percent for unclassified laborers, carpenters, and electricians, and approximately 50 percent for painters. [5]
All petitioners were employed at Watts Bar under 11-29 appointments until October 1978. [6] Each of the petitioners was consistently reemployed within a few days after the termination of each of his 11-29 appointments. In October 1978 the provision for termination within 11 months and 29 days was deleted from the appointments of hourly construction workers at Watts Bar and other construction sites. Petitioners Clark, Snyder, Moody, Burnette, Elliott, and Pelfrey *339 each received a copy of a document, TVA Form 9880, entitled "Employee Status and Information Record," bearing an issuance date of 78 10 18 and informing him of the change in his appointment. TVA deleted the termination provision from employment agreements in October 1978 because (1) it had found that the cost of terminating and then reemploying workers was exorbitant and (2) it was laying off more employees than it was recruiting at that time. From 1974 to 1979, the total number of construction workers employed by TVA had increased from approximately 7,000 to approximately 20,000. As of February 2, 1982, the date of trial, a total of somewhat over 13,000 construction workers were employed by TVA. The number of construction workers employed by TVA at Watts Bar had slowly increased from 1972 through 1975 and then increased rapidly until 1979, when there were aproximately 3,100 construction workers employed by TVA at Watts Bar. From 1979 through February 2, 1982, there was "some slackening" of the number of construction workers employed by TVA at Watts Bar. For the years in issue, respondent disallowed deductions claimed by petitioners Clark, Snyder, Moody, Burnette, Dunlap, and *340 Pelfrey for the cost of transportation to and from work in the following amounts: Petitioner
Year
Amount
Clark
1977
$3,162.00
1978
2,983.00
1979
3,310.00
Snyder
1979
2,174.00
Moody
1979
3,165.40
Burnette
1978
2,380.00
1979
2,590.00
Dunlap
1978
3,728.00
Pelfrey
1978
2,754.00
1979
3,263.00
Respondent disallowed deductions claimed by petitioner Elliott for travel and transportation expenses in the amounts of $4,068 and $3,735.30 for the years 1977 and 1978, respectively. OPINION Section 162(a)(2) allows a taxpayer to deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, including traveling expenses while away from home in the pursuit of a trade or business. This Court has long held that as a general rule the term "home," as used in section 162, means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is situated. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). An exception to this general rule is provided, however, *341 when a taxpayer's employment away from his residence is temporary rather than indefinite or permanent in duration. Commissioner v. Peurifoy,358 U.S. 59 (1958); Kroll v. Commissioner,supra at 562. If the employment is considered temporary, the taxpayer may be permitted to deduct his traveling expenses, including the cost of transportation to and from work. See Norwood v. Commissioner,66 T.C. 467, 469 (1976) and footnote 3, supra.
Temporary employment has generally been defined as a type which can be expected to terminate within a short period of time. Norwood v. Commissioner,supra at 469; Cockrell v. Commissioner,38 T.C. 470, 479 (1962), affd. 321 F.2d 504 (8th Cir. 1963). However, even if it is known that the employment will terminate at some future date, the employment is not temporary if it is expected to last for a substantial or indefinite period of time. Jones v. Commissioner,54 T.C. 734 (1970), affd. 444 F.2d 508 (5th Cir. 1971); Cockrell v. Commissioner,supra.Employment which orginally is temporary may *342 subsequently become indefinite because of changed circumstances or the passage of time. Norwood v. Commissioner,supra;Kroll v. Commissioner,supra.The burden of proving that his employment was temporary rests on the taxpayer. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
In support of their position that their employment at Watts Bar was temporary, petitioners primarily rely on the fact that until October 1978 they were employed by TVA pursuant to temporary appointments not to extend beyond 11 months and 29 days. Petitioners further assert that although the provision for termination within 11 months and 29 days was deleted from their appointments in October 1978, they could foresee employment for only a short period of time thereafter since the demand for construction workers was decreasing in 1979. Based on the record in this case, we conclude that petitioners have not established that their employment at the Watts Bar construction site was temporary rather than indefinite. There is nothing in the record to indicate that any of the petitioners was told that his *343 work at the Watts Bar project would last for only a short time. The termination provision initially contained in each of the petitioners' work appointments did not indicate that their work would actually be terminated. A TVA official testified to the effect that the chances of reemployment were at least 80 percent for steamfitters, at least 50 percent for unclassified laborers, carpenters, and electricians, and approximately 50 percent for painters, and we have so found. Even though petitioners may have had no assurance of how long their respective jobs would last, that fact is not determinative of whether their employment was temporary. McCallister v. Commissioner,70 T.C. 505, 510 (1978). The absence of permanence does not require a finding that petitioners' jobs were temporary. Garlock v. Commissioner,34 T.C. 611, 616 (1960). [7]
*344 That petitioners' prior work records and their ability to pass physical examinations affected their chances of reemployment by TVA at Watts Bar are of no moment. Any individual's employment may be discontinued if his work is not satisfactory or if he is physically incapable of performing his assigned duties. Those contingencies do not cause a taxpayer's employment to be termed temporary. Petitioners' contention that the chances of reemployment by TVA at Watts Bar for any individual employee was much less than the 50 to 80 percent figures cited by the TVA official because each employee had to be approved by the local union for his craft before he had a chance of being reemployed does not justify extensive discussion, inasmuch as the record fails to show how probable the possibility of a union disapproving any workers was. [8]
*345 The few brief interruptions in petitioners' work at the termination of their successive 11-29 appointments are not enough to transmute what was indefinite employment into separate periods of temporary employment. Blatnick v. Commissioner,56 T.C. 1344, 1348 (1971) (holding that short interruptions of work at a particular site do not, standing alone, cause a taxpayer's employment which would otherwise be indefinite to become temporary). [9]
Although a diminution in the TVA's demand for construction workers was one reason that the termination provision was removed from petitioners' respective employment agreements in October 1978, that fact does not mean that petitioners' jobs could be expected to last for only a short period of time. It appears from the record that the TVA's demand for construction workers declined beginning in 1979 primarily as a result of its deferring the constuction of units at its Phipps *346 Bend, Hartsville, and Yellow Creek nuclear plant sites. The record indicates that there was "some slackening" of the number of construction workers needed at Watts Bar from 1979 through February 2, 1982. Yet, we are unable to conclude that any of petitioners' jobs could be expected to terminate within a short period of time on account of that slackening. Before the first year in issue in their respective cases, petitioner Clark, Snyder, Moody, Burnette, Elliott, and Dunlap had been continuously employed, except for brief interruptions, at Watts Bar for 19, 42, 19, 58, 9, and 17 months, respectively. As of the date of trial of the instant cases, petitioner Pelfrey had been continuously employed, except for brief interruptions, at Watts Bar for approximately 58 months. The substantial actual duration of the employment of each of the petitioners at Watts Bar is an additional reason for concluding that their employment was "indeterminate in fact as it develop[ed]". Norwood v. Commissioner,supra, at 471; Commissioner v. Peurifoy,254 F.2d 483, 486 (4th Cir. 1957), revg. 27 T.C. 149 (1956), affd. per curiam 358 U.S. 59 (1958). *347 Petitioners cite and rely upon Markey v. Commissioner,490 F.2d 1249 (6th Cir. 1974) for the proposition that the criterion used by the Sixth Circuit, to which the present cases are appealable, to determine whether travel expenses are deductible is whether it is reasonable for the taxpayer to move his home to the job site. In Markey the taxpayer had two places of trade or business which were geographically distant from one another. The Sixth Circuit held that to determine which of the two locations was the taxpayer's home for purposes of section 162(a)(2) the proper test was an objective one: We hold, therefore, that when a taxpayer has two places of business or employment at a considerable distance from one another, his designation of one as his abode, if different from the place where he spends more of his time, engages in greater business activity, and derives a greater proportion of his income, is not dispositive of the question which location is his home for the purpose of deducting traveling expenses. [490 F.2d at 1255.] Implicit in the Sixth Circuit's opinion in Markey is that, for purposes of section 162(a)(2), the home of a *348 taxpayer who has two places of business is the location of one of his businesses. [10]
The Sixth Circuit has, in effect, adopted the same test as this Court to determine whether a taxpayer is entitled to deduct expenses incurred in traveling between his personal residence and the sole location where he is engaged in a trade or business. Specifically, the Sixth Circuit held in Ham v. United States,408 F.2d 671 (6th Cir. 1969) that if a taxpayer's employment at a particular place is for an indefinite duration, his maintenance of his personal residence at a location other than the place of his employment is not required by the exigencies of his trade or business, but instead is motivated by personal reasons. [11]
Petitioners identify the deferral or shelving by TVA of the Watts Bar project *349 as an event they could "foresee" that would result in the termination of their employment.They ask us to use judicial notice to find that, shortly after the trial of the instant cases, TVA announced that there would be a slowdown at the Watts Bar project and that construction workers would be laid off at the project. See United States v. An Easement and Right-of-way, etc.,246 F. Supp. 263, 269 (W.D. Ky. 1965). Petitioners have introduced no evidence to establish that the deferral or shelving of the Watts Bar project by TVA was a foreseeable occurrence during the years in issue. Rather, the only evidence regarding the foreseeability of a deferral of the Watts Bar project directly contradicts petitioners' position: the TVA official testified at trial that "no consideration" had been given by TVA to deferral of the Watts Bar project. Petitioners finally argue that their work was temporary because it is common knowledge in the construction industry that workers are employed only so long as they are needed by the TVA and that the number of workers needed varies from day to day.Although that may well be true, [12] it does not show that petitioners' employment was *350 temporary, rather than indefinite in duration. As we stated earlier, for employment to be considered temporary, it must be expected to terminate within a short period. Norwood v. Commissioner,supra at 469. Petitioners, in maintaining that their costs of transportation to and from work are deductible under section 162(a), also allege that housing was not available around or near the Watts Bar construction site. It appears from the record before us that a limited amount of low quality housing, rather than no housing whatsoever, *351 was available in the vicinity of the Watts Bar project. [13] Even assuming, however, that the evidence before us established that the Watts Bar construction site is located in an area where housing is unavailable, we would conclude that the costs of petitioners' daily round trip expenditures are nondeductible. Coombs v. Commissioner,608 F.2d 1269, 1276 (9th Cir. 1979); Sanders v. Commissioner,439 F.2d 296, 299 (9th Cir. 1971) and cases there discussed. [14]
In accordance with the foregoing, we sustain respondent's disallowance of petitioners' deductions for transportation expenses and away from home traveling expenses under section 162(a)(2). Decisions will be entered for respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Henry P. Snyder, docket No. 5015-81; Michael A. Moody and Jessie S. Moody, docket No. 5016-81; Paul W. Burnette and Pauline Burnette, docket No. 5186-81; William H. Elliott, Sr. and Barbara C. Elliott, docket No. 7244-81; Joe D. Dunlap and Katherine Dunlap, docket No. 8232-81; Ronald E. Pelfrey and Anna S. Pelfrey, docket No. 9975-81.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. ↩
3. On brief, respondent has stated that the only issue for decision is whether petitioners' employment was temporary or indefinite. Respondent's counsel has specifically conceded that if the Court finds that the employment of petitioners Clark, Snyder, Moody, Burnette, Dunlap, and Pelfrey was temporary, then those petitioners should be entitled to the deductions they claimed for transportation expenses under section 162(a) even though this Court has held that the expenses of driving to and from work are nonductible commuting expenses whether or not the taxpayer's employment was temporary. See McCallister v. Commissioner,70 T.C. 505↩, 503 (1978).
4. In 1982, Spring City had a population of approximately 2,300.↩
5. Whether a construction worker was reemployed depended upon (1) the immediate needs of TVA, (2) his work record, (3) his ability to pass a physicial examination, and (4) the decision of the union with which he was affiliated.↩
6. Petitioner Burnette worked for a short while in 1973 under a "trade and labor temporary construction hourly" appointment "not to extend past 30 days from date of appointment." His appointment was thereafter changed to an 11-29 appointment.↩
7. For other cases involving factual situations substantially similar to petitioners' circumstances, see Groover v. CommissionerT.C. Memo. 1982-329, on appeal (11th Cir., Sept. 17, 1982); Vermillion v. Commissioner,T.C. Memo. 1982-192; and Brown v. Commissioner,T.C. Memo. 1982-189↩.
8. Petitioners point out that if a construction worker employed at Watts Bar was not a member of a local having jurisdiction over jobs for his craft at Watts Bar, the length of his employment at Watts Bar was "affected by the fact that * * * [he] had to step aside in favor of a" member of the local with jurisdiction in the event of layoffs. This alleged fact is of no help whatsoever to petitioners Clark, Snyder, Moody, Dunlap, and Pelfrey, who were affiliated with locals for their respective crafts in Chattanooga, which had jurisdiction over the jobs at Watts Bar, during their employment by TVA at the construction site. It likewise is of no help to petitioner Burnette, inasmuch as he became affiliated with the Chattanooga local for his craft before the years in issue in docket No. 5186-81. As for petitioner Elliott, who was affiliated with a local in Knowville while he was employed at Watts Bar, there is nothing in the record indicating that his affiliation with the Knoxville local increased the likelihood of his being laid off in a short time. We further note that qualified workers in petitioner Elliott's craft were in short supply in the vicinity of Watts Bar during 1975 through 1978, so that qualified individuals from other areas occasionally were recruited.↩
9. We note that, in the cases of petitioners Snyder and Moody, the fact that petitioners were employed under 11-29 appointments until October 1978 is totally without significance since respondent's determinations for their 1979 year only are in issue.↩
10. Branscomb v. Commissioner,T.C. Memo. 1981-97↩.
11. Although the record indicates that petitioner Clark raised cattle during 1977, 1978, and 1979 on a farm he owns in Rockwood, petitioner Clark has neither presented sufficient evidence to establish nor argued that Rockwood should be considered his tax home because of his cattle-raising activities.↩
12. Other courts have recognized that work in the construction industry is, by its very nature, impermanent. See, e.g., Commissioner v. Peurifoy,254 F.2d 483, 486 (4th Cir. 1957), affd. 358 U.S. 59 (1958). Nevertheless, the courts have continued to apply the same standards to construction workers' employment as to other workers' employment, judging each separate employment on its own facts to determine whether it is temporary or indefinite. Kasun v. United States,671 F. 2d 1059, 1062 (7th Cir. 1982); Frederick v. United States,603 F.2d 1292, 1296↩ (8th Cir. 1979).
13. The only evidence in the record concerning the availability of housing in Spring City is petitioner Snyder's testimony that as far as he knew there were no rental properties or homes to buy, petitioner Pelfrey's testimony that there "weren't very many" houses available, and petitioner Moody's testimony that the housing which was available "was below standards." ↩
14. See Deblock v. Commissioner,T.C. Memo. 1980-277↩.