## EDWARD F. AND FRANCES L. BLATNICK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4345–70. Filed September 22, 1971.

Edward F. Blatnick, pro se.
*David E. Gaston*, for the respondent.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1967 in the amount of $676.81.

The issue for decision is whether petitioner Edward F. Blatnick is entitled to deductions under section 162(a)(2), I.R.C. 1954,[1] for the calendar year 1967 for amounts expended for meals, lodging, and transportation at Pagosa Springs, Colo. and the cost of biweekly automobile trips from Pagosa Springs to Durango, Colo., where he owned and maintained a home in which his wife resided.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Edward F. and Frances L. Blatnick are husband and wife who resided in Durango, Colo., at the time of the filing of their petition in this case.

For the taxable year 1967, petitioners filed a joint Federal income tax return with the district director of internal revenue, Denver, Colo.

Edward F. Blatnick, hereinafter referred to as petitioner, is a heavy earth-moving equipment operator. He worked in that trade from 1942 until 1960 when he took the position of business agent for the operating engineers at the Durango, Colo., office of the International Union of Operating Engineers, Union Local No. 9 (hereinafter referred to as the union local). Petitioner has been a member of the union local since 1942. On July 1, 1965, petitioner resigned as a business agent of the union local.

As a union member, petitioner has procured work through the union hiring hall and has been referred to numerous jobs. By custom, a construction contractor will call the union local and request heavy equipment operators (specifying the type of equipment) to report to a jobsite. The union local refers its membership from its "out-of-work" list to various jobs. The "out-of-work" list has each union member who desires work listed together with the types of equipment he is qualified to operate. The list is operated on a first-in first-out basis by member and type of equipment.

Each member of the union local is obligated to report to a given jobsite once he has been referred, notwithstanding the undesirable nature of the location. Any member referred to a job is under a moral obligation to report lest the requesting contractor hire nonunion operators and not rely on the union local in the future.

The jobs to which the members are referred last for varying periods of time. When the work for which an operator was referred is completed, the construction contractor may retain the operator and shift

---

[1] All references are to the Internal Revenue Code of 1954.

him to another jobsite or lay him off. When he is "laid off" the operator places his name on the "out-of-work" list at the union local.

Prior to April 1965, the joint venture of Colorado Constructors, Inc., and Horner Constructors, Inc., was awarded the contract for the construction of a tunnel, named the "Blanco," in an area southwest of Pagosa Springs, Colo. The construction of this tunnel constituted a part of the Federal Government's San Juan-Chama water diversion project which called for the construction of three tunnels, the Blanco, the Oso, and the Azotea, extending from southwest Colorado into New Mexico. Work on the building of the Blanco Tunnel commenced in April of 1965. The north portal of this tunnel was 18 miles by road from Pagosa Springs, Colo., and the south portal was 23 miles by road from Pagosa Springs, Colo.

Petitioner, on July 1, 1965, went on the "out-of-work" list of the union local and was employed by Colorado Constructors, Inc., through that local commencing on July 3, 1965, as a bulldozer operator on an hourly basis. Shortly thereafter, petitioner worked as a supervisor at the same jobsite and after 2 months returned to operating a bulldozer.

On September 18, 1965, petitioner's employer, Colorado Constructors, Inc., moved him to another jobsite on U.S. Highway No. 160 at Wolf Creek Pass (approximately 20 miles east of Pagosa Springs, Colo.) as a supervisor. On October 10, 1965, petitioner returned to the Blanco Tunnel site as a loader operator where he served in that capacity and as a supervisor until sometime in December 1965 when he was laid off.

Petitioner immediately went to the union hall and placed his name on the "out-of-work" list, and was referred back to the Blanco Tunnel jobsite early in 1966. In December 1966, petitioner was again laid off, whereupon he placed his name on the "out-of-work" list at the union local. By the time petitioner's name reached the top of the list, operators were once again needed at the Blanco Tunnel jobsite where he returned on or about January 18, 1967.

Petitioner remained on the jobsite at the Blanco Tunnel until November 27, 1967, at which time work was discontinued on the jobsite due to inclement weather. Petitioner was once again referred by the union local to the Blanco Tunnel jobsite when work was resumed on December 18, 1967. Petitioner's employment with Colorado Constructors, Inc., continued until December 8, 1968, when he was hospitalized. Following convalescence and recovery, petitioner was recalled to the Blanco Tunnel job on April 15, 1969, and worked on that job until May 24, 1969, when he obtained employment with Oso Constructors, Inc., at the Oso and Azotea Tunnel projects, where he

worked until approximately December 2, 1969, when he was laid off.

Petitioner was born and reared in Durango, Colo., and has maintained a home there for approximately 20 years. During the calendar year 1967, his wife resided in his home. Petitioner also rented an apartment at Pagosa Springs, Colo., 60 miles east of Durango during 1967. He originally rented this apartment in late 1965 and kept it continuously during all of 1966, 1967, and the major portion of 1968. He occupied the apartment when he was in Pagosa Springs working at the Blanco Tunnel jobsite.

Petitioners on their income tax return for the year 1967 claimed an adjustment to income for employee business expense in the amount of $3,432.20 which they explained as "away from home expenses." Of this amount $600 was attributed to the rental of the apartment at Pagosa Springs, Colo., at a rate of $50 per month for 12 months; $1,715 was attributed to the cost of meals incurred by petitioner computed at a rate of $35 per week for 49 weeks while in Pagosa Springs, Colo.; and the remaining $1,117.20 was attributed to 22,344 miles driven by petitioner during 1967 at the rate of 5 cents per mile. Of the 22,344 miles driven by petitioner, 10,584 miles were attributed to six round trips per week of 36 miles each, for 49 weeks, between Pagosa Springs, Colo., and the place of his empoyment at the Blanco Tunnel site; and the remaining 11,760 miles were attributed to two round trips per week of 120 miles each, for 49 weeks between Pagosa Springs, Colo., and Durango, Colo.

Petitioner was not reimbursed for any travel or living expenses by Colorado Constructors, Inc., during the period of his employment with that corporation.

Respondent in his notice of deficiency disallowed the deduction claimed by petitioners in the amount of $3,432.20 for travel expenses while "away from home."

### ULTIMATE FINDING OF FACT

Petitioner's employment Corporation, Inc., at the Blanco Tunnel site during the year 1967 was of an indefinite nature.

### OPINION

Section 162(a)(2) provides for deduction of all ordinary and necessary expenses paid or incurred in carrying on a trade or business including traveling expenses while away from home in the pursuit of a trade or business. For a taxpayer to be entitled to a deduction for traveling expense under section 162(a)(2) it is incumbent upon him to show that the expense was (1) "a reasonable and necessary travel-

ing expense," (2) "incurred 'while away from home,'" and (3) "incurred in pursuit of business." *Commissioner* v. *Flowers*, 326 U.S. 465 (1946).

Except as to that portion of the mileage claimed by petitioner which is attributable to travel between Pagosa Springs and Durango, Colo. (11,760 miles at 5 cents per mile), respondent does not contend that petitioner did not in 1967 expend the amount claimed to be deductible for ordinary and necessary living expenses in Pagosa Springs, Colo. However, respondent does contend that petitioner was not away from "home" as that term is used in the statute during the calendar year 1967.

We have consistently held that a taxpayer's "home" within the meaning of section 162(a)(2) is his principal place of employment. *Ronald D. Kroll*, 49 T.C. 557, 561 (1968). We have, however, recognized an exception to this rule where a taxpayer's employment at his principal place of duty is "temporary" as distinguished from "indefinite" or "indeterminate." See *Kermit L. Claunch*, 29 T.C. 1047 (1958), affd. 264 F. 2d 309 (C.A. 5, 1959), and *Peurifoy* v. *Commissioner*, 358 U.S. 59 (1958).

Petitioner had successive periods of employment with the same employer, Colorado Constructors, Inc., over a period of approximately 40 months. Whether that employment was "temporary" as distinguished from "indefinite" or "indeterminate" is the critical issue in this case. Employment that lacks permanence is "indefinite" rather than "temporary" unless it is "the sort of employment in which termination within a short period could be foreseen." *Beatrice H. Albert*, 13 T.C. 129, 131 (1949).

Petitioner's employment at the Blanco Tunnel jobsite by Colorado Constructors, Inc., was interrupted by periodic layoffs, on which occasions he sought new employment through his union local. Petitioner's employment at the Blanco Tunnel jobsite uninterrupted by a "layoff" did not exceed a period of a year. Petitioner argues that for this reason he had successive periods of "temporary" employment. We do not agree. Brief interruptions of work at a particular location do not, standing alone, cause employment which would otherwise be "indefinite" to become "temporary." *Kermit L. Claunch*, *supra* at 1051–1052.

Petitioner would also have us place a greater significance on that period of time that Colorado Constructors, Inc., shifted him to the jobsite on U.S. Highway No. 160 than in our view the facts here present warrant. As we indicated in *Floyd Garlock*, 34 T.C. 611, 615 (1960), "a mere geographical relocation from one construction site to another does not of itself automatically, give rise to a new, separate, and distinct job."

The very nature of the Blanco Tunnel project on which petitioner was working, a major construction project, was such that it could reasonably be expected to continue over a period of several years. As was demonstrated, the project was such that it would require an operator of petitioner's skills during a substantial portion of that time.[2] Petitioner in his position as a business agent with the union local when the project was commenced was in a position to be well aware of this fact. At the beginning of 1967 petitioner had been at the same jobsite with the same employer for approximately 18 months and had been laid off twice for a period of short duration and both times was recalled through his union local. The precise reasons for these "layoffs" are not shown but the inference from the record is that they were due to inclement weather shutting down most of the construction work on the project. As we view the facts, by the beginning of 1967 there was a strong possibility, even a probability, of this pattern of events repeating itself for an indefinite or indeterminate period. In fact the record shows a job shutdown from November 27 to December 18, 1967, due to inclement weather. The record indicates that petitioner by the end of 1965 anticipated being recalled to the Blanco Tunnel project since even during the periods of time when he was laid off, he continued to maintain the apartment which he rented at Pagosa Springs, Colo., to have it available when he would return to work in that area. See *Floyd Garlock, supra* at 616.

Based on all the facts of record we conclude that petitioner's principal place of employment in the year 1967 was in the vicinity of Pagosa Springs, Colo., for a substantial, indefinite, and indeterminate period of time, and that expenses incurred for meals, lodging, and transportation during that year are not deductible as traveling expenses while away from home. Further, we conclude that automobile expenses incurred by petitioner on trips between his post of duty in the vicinity of Pagosa Springs, Colo., and his residence in Durango, Colo., to visit his wife were personal expenses and therefore nondeductible. *Ray A. Smith*, 33 T.C. 1059, 1064 (1960).

*Decision will be entered for respondent.*

---

[2] As was indicated by the U.S. Court of Appeals for the Fourth Circuit in *Commissioner* v. *Peurifoy*, 254 F. 2d 483, 486 (C.A. 4, 1957), affd. 358 U.S. 59 (1958):

"Work in the heavy construction industry, by its very nature, has a degree of impermanence. Employment is usually for each job only and lasts no longer than the need at that project for the particular skill of the individual employee. Upon many of the larger projects, however, such need, and the actual employment of an individual, may last for several, even many, years. Other projects may be of comparatively short duration. It is also a characteristic of the industry, as shown in the stipulations in this case, that upon larger construction projects outside the larger metropolitan centers, the local supply of the necessary skills must be greatly augmented by workers coming from other places. Work in the industry, therefore, is, to some extent, transient as well as impermanent."