SAM D. CALABY and ARLINE J. CALABY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Calaby v. Commissioner
Docket No. 8201-79
United States Tax Court
T.C. Memo 1982-91; 1982 Tax Ct. Memo LEXIS 658; 43 T.C.M. (CCH) 610; T.C.M. (RIA) 82091; February 22, 1982. Sam D. Calaby, pro se. Bernard Wishnia, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined deficiencies in petitioners' income taxes for the taxable years 1976 and 1977 in the amounts of $ 1,940 and $ 2,125, respectively. The sole issue for our determination is whether petitioner [1] is entitled to deductions under section 162(a)(2) [2] for the taxable years 1976 and 1977 for amounts expended for meals, lodging, and transportation while he was employed in Washington, D.C. *659 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Sam D. Calaby (Sam) and Arline J. Calaby, husband and wife, resided in Pennington, New Jersey when they filed their petition in this case. They filed their 1976 and 1977 joint Federal income tax returns with the Internal Revenue Service. From 1965 through early June 1972, Sam was employed by the United States Department of Commerce, Economic Development Administration (EDA), Office of Technical Assistance (OTA) in Washington, D.C. at a GS-15 level. During this time, Sam lived with his wife and 3 children in a home owned by petitioners in the Washington, D.C. area. Pursuant to the International Personnel Act (IPA), Sam was temporarily detailed to the New Jersey Department of Environmental Protection in Trenton, New Jersey. On July 1, 1972, Sam, his wife and 3 children moved to Hopewell Township (Pennington), New Jersey, approximately 20 miles from Trenton, New Jersey. This detail lasted from June 1972 through June 1975. Originally intended to be a two-year detail, this tour of duty was extended one additional year. The IPA provides for temporary assignment of employees between Federal *660 agencies and state or local governments. 5 U.S.C. section 3371, et seq. Sam remained an employee of EDA during such detail and was entitled to maintain all his Federal benefits and credit the time toward retirement, pay increases, etc. 5 U.S.C. 3373(c). During the detail, the Federal Government paid approximately half of Sam's salary and maintained his health benefits. IPA details are by their very nature short-lived. The statute (5 U.S.C. section 3372(a)) specifically states that the initial assignment may not exceed two years, and may be extended by the head of a Federal agency for not more than two additional years. Before the completion of his New Jersey detail, Sam attempted to find a job in New Jersey but was unable to obtain a suitable position. Upon completion of the IPA detail, EDA was obligated to reinstate Sam to a GS-15 level in his old position or one roughly equivalent thereto. During the years of the IPA detail, Mr. Baill, Sam's supervisor specifically maintained the organizational structure of OTA and did not promote anyone else to fill the slot temporarily vacated by Sam. Sam expected to *661 return to Washington, D.C. upon the completion of the detail. Sam returned to Washington, D.C. in July 1975 but his family remained in New Jersey. From July 1975 through December 31, 1975, Sam was on a temporary six-month assignment from EDA to the Office of Management and Budget in Washington, D.C. From January 1, 1976 through March 5, 1978, with the exception of an assignment of EDA's regional office in Philadelphia from July 1 through October 15, 1977, Sam was assigned to the OTA offices in Washington, D.C. During the years 1976 and 1977, Sam's wife worked on a part-time basis in the vicinity of their home in New Jersey and his 3 children attended New Jersey elementary or high schools during those years. Although Sam enjoyed living in New Jersey, little evidence was offered concerning any strong economic, social and familial bonds that he had with New Jersey. The predecessor agency to EDA was established in 1961 and replaced by the EDA in 1965. On several occasions, EDA had been faced with the possibility that its funding might not be renewed by Congress. Reduction in force notices were actually prepared for EDA staff members in 1965 and 1972. Although the existence *662 of EDA was contingent upon periodic Congressional authorizations, the agency never ceased to exist. After the presidential election in 1976, EDA had a somewhat increased budget and the staff, including its supervisors, was optimistic that there would not be any reductions. However, the Federal budget for the 1978 fiscal year submitted in January 1977 by the President and developed in December 1976 by the Commerce Department did provide for an 80 percent reduction (from 12.5 million to 2.5 million dollars) in EDA's budget and a comparable reduction in personnel. Despite this proposed reduction, none of the staff positions were actually terminated. In addition, in view of Sam's seniority and high managerial position with the agency, he could have "bumped" other managers within EDA in the event of a significant reduction in force. Sam's employment in Washington, D.C. during 1976 and 1977 was not temporary. From March 6, 1978 through February 29, 1980, Sam was on another detail from EDA to the New Jersey Economic Development Authority in Trenton, New Jersey. For the taxable years 1976 and 1977, petitioner claimed deductions for business expenses for meals, lodging, and transportation *663 with respect to his employment in Washington, D.C. in the amounts of $ 4,770 and $ 5,050. These amounts were disallowed in full by the respondent. OPINION The issue for our decision is whether expenses deducted by petitioner for meals, lodging and transportation with respect to his employment in Washington, D.C. during 1976 and 1977 were incurred while he was "away from home" within the meaning of section 162(a)(2). Section 162(a)(2) allows a taxpayer to deduct traveling expenses (including amounts expended for meals and lodging) incurred while away from home in the pursuit of a trade or business. In order to deduct these expenses, the taxpayer must establish that the expenses were (1) reasonable and necessary; (2) incurred in the pursuit of business; and (3) incurred "while away from home." Commissioner v. Flowers,326 U.S. 465 (1946). Respondent does not dispute that the amounts deducted by petitioner were reasonable and necessary, and incurred "in pursuit of business." Respondent does argue, however, that the expenses are not deductible because they were not incurred while petitioner was away from "home" as that term is used in section 162(a)(2). Normally *664 the word "home" as used in that provision means the vicinity of the taxpayer's principal place of employment. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968). However, an exception to this rule exists when the taxpayer's place of employment in an area away from his residence and usual place of employment is temporary rather than permanent or indefinite in duration. Commissioner v. Peurifoy,358 U.S. 59 (1958).Under this exception, the taxpayer's "tax home" does not shift to the vicinity of his temporary employment and, therefore, he is regarded as "away from home" while working at such location. The purpose underlying this exception is to relieve the taxpayer of the burden of duplicate living expenses while at a temporary employment location, since it would be unreasonable to expect him to move his residence under such circumstances. Tucker v. Commissioner,55 T.C. 783, 786 (1971). Generally, employment is considered temporary if it "can be expected to last for only a short period of time." Tucker v. Commissioner,supra at 786. Even if it *665 is known that a particular job will terminate at some future date, that job is not temporary if it is expected to last for a substantial or indefinite period of time. Jones v. Commissioner,54 T.C. 734 (1970), affd. 444 F.2d 508 (5th Cir. 1971). Whether employment is temporary or indefinite is a question of fact. Commissioner v. Peurifoy,254 F.2d 483, 487 (4th Cir. 1958). "No single element is determinative of the ultimate factual issue of temporariness, and there are no rules of thumb, durational or otherwise." Norwood v. Commissioner,66 T.C. 467, 470 1976). Petitioner argues that his employment in Washington, D.C. with EDA during 1976 and 1977 was temporary. In support of this contention, he offered testimony and submitted various memoranda indicating that the existence of EDA as an agency was dependent on periodic Congressional resolutions and that during 1976 and 1977 the agency was in serious danger of being eliminated. Petitioner introduced further evidence that the budget for the fiscal year 1976 submitted in January 1977 by the President and developed in December 1976 by the Commerce Department provided *666 for an 80 percent reduction in EDA's budget and a similar reduction in personnel. In sum, petitioner's principal argument is that his employment with EDA upon his return to Washington, D.C. was temporary because there were serious doubts as to how lon EDA would remain in existence. We cannot agree. Rather, after considering all the facts and circumstances, we conclude that petitioner's employment in Washington, D.C. from 1975 through 1978 was indefinite. Several factors, no one of them in itself determinative, support our conclusion. Although the life of EDA possessed a quality of impermanence, this is to some extent true of many governmental agencies whose existence is subject to the whims of Congress. In fact, EDA had been in existence for over 10 years in 1976 despite the fact that its life had to be periodically resuscitated by Congressional life-support systems. In addition, despite proposed reductions in force, none of the staff positions were actually terminated. Thus, the temporariness of Sam's employment in Washington, D.C. in 1976 and 1977 cannot be predicated on the ephemeral character of EDA's existence as an agency. A review of the essential facts surrounding *667 Sam's employment with the Federal Government in Washington, D.C. and assignment to New Jersey inescapably leads to the conclusion that Sam was not "away from home" in 1976 and 1977. From 1965 until June 1972, Sam was employed by EDA, Office of Technical Assistance in Washington, D.C. at a GS-15 level. During that time, Sam lived with his family in a home in the Washington, D.C. vicinity. From July 1972 until June 1975 Sam worked in New Jersey pursuant to IPA on a temporary detail for the New Jersey Department of Environmental Protection. A Federal employee working for a state pursuant to an IPA detail remains an employee of his agency (in Sam's case, EDA) and is entitled to maintain all his Federal benefits and credit his time toward his retirement, pay, increases, etc. 5 U.S.C. section 3373. During this time, the Federal Government paid approximately half of Sam's salary and maintained his health benefits. Sam's wife and children lived with him in a home they purchased in New Jersey but when Sam returned to Washington, D.C. in July 1975 he declined to move them. At the conclusion of the New Jersey detail, Sam did apply for jobs in New Jersey but met with *668 no success. Since Sam's IPA detail in New Jersey was for a period of between two and four years, [3] his only job in June 1975 was with EDA in Washington, D.C. and he was entitled to reinstatement upon the completion of the detail to a GS-15 level in his old position or one roughly equivalent thereto. Having failed to secure suitable employment in New Jersey, Sam returned to Washington, D.C. in July 1975 where he remained until March 1978. Sam's own testimony shows that during his detail in New Jersey, he not only considered it a reasonable probability, but even had an expectation that he would return to work with EDA in Washington, D.C. upon the completion of the detail. Nonetheless, Sam's wife and children remained in New Jersey. Since Sam enjoyed living in New Jersey and was nearing retirement age, he may have simply decided for personal reasons to leave his family in New Jersey while working for EDA until he could get another IPA assignment or find another job there. Sam, in fact, *669 did manage to secure another IPA detail in New Jersey with the New Jersey Economic Development Authority where he worked from March 6, 1978 through February 1980. The only explanation offered by Sam for his decision to leave his family in New Jersey was the precarious nature of employment with EDA. As we pointed out previously, the "temporariness" of Sam's employment with EDA in 1976 and 1977 cannot be predicated on the quality of impermanence associated with employment with the Federal Government. In addition, even though Sam may have had no assurance as to how long his employment in Washington, D.C. would last, this is not determinative of whether his employment was temporary. McCallister v. Commissioner,70 T.C. 505 (1978). The lack of permanence does not necessarily require a finding that the employment was temporary for purposes of section 162(a)(2). Garlock v. Commissioner,34 T.C. 611, 616 (1960). Sam worked for EDA in Washington, D.C. from 1965 through June 1972 and again from July 1975 through March 5, 1978 (except for a 3-1/2 month assignment to the Philadelphia regional office of EDA in the middle of 1977), a period of approximately *670 10 years. This makes it clear that his "tax home" during the years in question was Washington, D.C. Furthermore, the substantial duration of Sam's employment after his return to Washington, D.C. (for a period of 33 months) provides additional proof that Sam's employment was indefinite. See Babeaux v. Commissioner,601 F.2d 730 (4th Cir. 1979), revg. a Memorandum Opinion of this Court. [4] The fact that Sam thought that his employment in Washington, D.C. would be of short duration does not belie this conclusion; such subjective evidence, standing against the objective facts revealed by the record herein, is insufficient to carry petitioner's burden of proof that his employment was not for a substantial or an indefinite period. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). *671 We have a good deal of sympathy for the circumstances Sam confronted. His decision to leave his family in New Jersey was neither arbitrary nor unreasonable. In view of the contingencies he confronted and the point in his career he had reached, his decision was in accord with the common sense economics of the matter. Nevertheless, on this record we are constrained by the decided cases to find that Sam's Washington employment was at least for an indefinite period. See Babeaux v. Commissioner,supra, (Dumbauld, J., concurring). Decision will be entered for therespondent.
Footnotes
1. Since Arline J. Calaby is a party to this action solely by reason of filing a joint return with her husband, Sam D. Calaby will be referred to as petitioner. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
3. The statute says specifically that the initial assignment may not exceed two years, and may be extended for not more than two additional years. 5 U.S.C. sec. 3372(a)↩.
4. On brief, Sam strenuously asserts that his employment with the Economic Development Administration (EDA) in Washington, D.C. during the years 1976 and 1977 should be segmented into various periods, each lasting for less than 12 months and thus temporary. For example, Sam requests that we view the period from January 1976 until July 1976 as a separate period of employment since, as of January 1, 1976, EDA had authorization to exist and operate until June 30, 1976. Sam also asserts that the 1977 year should be considered separate since the President's proposed reduction in EDA's budget submitted to Congress in January 1977 indicated then that Sam's employment after such time was temporary. We reject such contentions. Sam's employment did not consist of a series of totally unrelated jobs that might be viewed independently. Cf. Smith v. Commissioner,33 T.C. 1059 (1960). Sam was not laid off between assignments and never changed employers. Cf. Blatnick v. Commissioner,56 T.C. 1344 (1971). Rather, from 1965 through 1980, Sam was at all times a GS-15 level employee of EDA, and from January 1, 1976 through March 5, 1978, he spent all but three and onehalf months in Washington, D.C. Thus, there is no rational basis for allowing the segmentation desired by Sam. Cf. Saunders v. Commissioner,T.C. Memo. 1977-427↩.