JAMES T. ALLISON, JR. and ANNETTE M. ALLISON, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Allison v. Commissioner
Docket Nos. 8359-79, 8688-80, 14134-82, 2679-83, 9237-83, 9250-83.
United States Tax Court
T.C. Memo 1986-346; 1986 Tax Ct. Memo LEXIS 270; 52 T.C.M. (CCH) 42; T.C.M. (RIA) 86346; August 4, 1986. Thomas R. Henley, recognized specially in docket Nos. 8359-79 and 14134-82. [2]
Wesley J. Lynes, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies and addition to tax in petitioners' Federal income tax: Addition to tax
Petitioner(s)
Docket No.
Year
Deficiency
Sec. 6653(a) [3]
Allison
8359-79
1977
$392.00
$19.60
Allison
14134-82
1978
4,080.00
Allison
1979
5,413.75
Allison
1980
3,426.00
Wagers
8688-80
1976
1,622.00
Bishop
2679-83
1980
1,343.00
Bishop
1981
1,808.00
Canady
9237-83
1978
1,123.90
Canady
1979
1,335.90
Dangerfield
9250-83
1979
898.00
*272 The issues remaining for decision are as follows: Issue 1.All Docket Nos. - Whether petitioners - husbands' employment for the Tennessee Valley Authority was "temporary" rather than "indefinite" for purposes of section 162. Issue 2.Docket No. 8359-79 - Whether "continuation of pay" received in 1977 by James T. Allison, Jr. because of a jobrelated injury is taxable. Issue 3. Docket No. 14134-82 - Whether the petitioners-Allison can exclude from income the amounts paid as meal allowances during the years in issue. Issue 4. Docket No. 8359-79 - Whether the Allisons are liable for an addition to tax for negligence or intentional disregard of rules and regulations for the taxable year 1977. Some of the facts have been stipulated and are found accordingly. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Issue 1. All Cases - T.V.A. Employment - Temporary vs. Indefinite
FINDINGS OF *273 FACT Each petitioner-husband deducted expenses incurred in either traveling to and from a Tennessee Valley Authority (hereinafter "T.V.A.") nuclear plant or, in one case, in maintaining a second residence near his place of work.All petitioners-husbands claimed that their employment at the nuclear plants during the years in issue was temporary so as to entitle them to deduct their expenses pursuant to section 162. James T. Allison, Jr. (Docket Nos. 8359-79 and 14134-82) - Petitioners-Allison resided in Chattanooga, Tennessee at the time they filed their petitions in these cases. James T. Allison, Jr. (hereinafter "petitioner-Allison") was first employed at the Sequoyah Nuclear Plant, located near Soddy-Daisy, Tennessee, as an apprentice steamfitter on a "trades and labor temporary construction hourly" contract on September 9, 1970. He was subsequently promoted to steamfitter and then to steamfitter foreman at the Sequoyah Nuclear Plant. He was then appointed Assistant General Foreman (Trainee) on April 24, 1978 on a "salary policy temporary full-time annual" contract. At the end of every year, under this supervisory appointment, he was required to go through an evaluation *274 process. When he accepted the supervisory position, he was not able to carry over his seniority from his former positions with the T.V.A. and he was essentially treated as a new employee. On January 2, 1979, petitioner-Allison transferred to the Watts Bar Nuclear Plant near Spring City, Tennessee, as an Assistant General Foreman (Trainee), and then, on April 8, 1983, he was promoted to Assistant General Foreman. He was still at the Watts Bar Plant when his case was tried, although he was at that time an Assistant Instrumentation Superintendent. Petitioner-Allison had no breaks in his employment with the T.V.A. since September 9, 1970, except due to illness, disciplinary action and a 3-day absence after he resigned as a steamfitter foreman to accept the position of Assistant General Foreman (Trainee) on April 24, 1978. Petitioner-Allison deducted the following business expenses for the years in issue: Year
Amount
1978
$7,456.20
1979
7,456.20
1980
8,010.50
Respondent disallowed these claimed deductions in his notice of deficiency on the grounds that petitioner-Allison's employment with T.V.A. was not temporary and, alternatively, that petitioner-Allison *275 has not substantiated such expenditures in accordance with section 162. Petitioner-Allison claimed business mileage for the years indicated based on the following distances traveled: Year
Miles
1978
67,062
1979
67,062
1980
60,550
Respondent does not agree that petitioner-Allison traveled these distances during the years in issue, even if his employment is determined to have been temporary. Eldon E. Wagers (Docket No. 8688-80) - Petitioners-Eagers resided in Oak Ridge, Tennessee at the time they filed their petition. Mr. Wagers (hereinafter "petitioner-Wagers") commenced his employment at the Watts Bar Nuclear Plant on December 12, 1975 as a "trades and labor temporary construction hourly" steamfitter. This type of appointment was characterized by T.V.A. as a temporary construction appointment, but it did not have a specific ending date.Thus, this type of appointment could continue indefinitely depending on T.V.A.'s needs. Petitioner-Wagers was promoted to steamfitter foreman on May 7, 1976, where he was still employed as of the time of this trial. His only breaks in employment were for two 2-week periods starting in November of 1976 and November *276 of 1977, respectively. The year in issue with respect to this petitioner-Wagers is 1976. Petitioner-Wagers is a member of the Local No. 102, Plumbers and Steamfitters Union, Knoxville, Tennessee, which is his home local. He is a "traveler" at Local 43 located in Chattanooga, Tennessee. [4]
The parties agree that, if this Court decides that petitioner-Wagers' employment with the T.V.A. was temporary, he should be allowed an employee business expense deduction in the amount of $3,373. Regardless of the disposition of that issue, respondent agrees that petitioners-Wagers are entitled to a deduction of $174 for other employee expenses. Robert J. Bishop (Docket No. 2679-83) - Petitioners-Bishop resided in Chattanooga, Tennessee at the time they filed their petition. Mr. Bishop (hereinafter "petitioner-Bishop") *277 began his employment for T.V.A. at its Sequoyah Nuclear Plant in November of 1977 as a pipefitter. He has been a pipefitter for 16 years and is a member of Local Union 295 in Daytona, Florida. He is a "traveler" at Local Union 43 in Chattanooga, Tennessee. [5]
Petitioner-Bishop's employment at Sequoyah was terminated in April 1980 when he began work at the Watts Bar Plant where he remained until December 1980, at which time labor problems precluded him from continuing his employment with T.V.A. The following month, January 1981, petitioner-Bishop was employed at a power plant in Sanford, Florida for approximately six weeks, at which time the Watts Bar plant reopened and he resumed his employment with T.V.A.[6] He was still employed at Watts Bar as of the time of his trial. The years in issue with regard to petitioner-Bishop are 1980 and 1981. Petitioner-Bishop was employed under a T.V.A. "11/29" contract in November 1977. That contract *278 contains a provision calling for termination at the end of 11 months and 29 days. The contract was used by T.V.A. because of the Presidential ceilings placed on Federal agencies during the years in issue. T.V.A. discontinued the use of such contracts in October 1978 for construction workers after which the "trades and labor temporary construction hourly" appointment was used. The primary purpose of the 11/29 contract and other similar contracts used by T.V.A., which designate employment as "temporary", was to provide management with the flexibility necessary to make rapid adjustments in employment levels to conform to manpower ceilings imposed on T.V.A. by the Office of Management and Budget. The contract terms were not indicative of the length of time an employee would actually work for T.V.A.There was little, if any, relationship between these contracts and the expected term of employment. If an employee's work was satisfactory, he could expect to remain employed until his skills were no longer needed. Eugene P. Canady (Docket No. 9237-83) - Petitioners-Canady resided in Concord, Tennessee at the time they filed their petition. Mr. Canady (hereinafter "petitioner-Canady") *279 began his employment with T.V.A. on March 6, 1976 at the Bellefonte Nuclear Plant in Scottsboro, Alabama as an electrician. As of the date his case went to trial, he was still employed by the T.V.A. at their Bellefonte location. Petitioner-Canady's only breaks in T.V.A. employment were the two-week breaks commencing in February 1977 and March 1978 necessitated by the terms of the "11/29" contract he had with the T.V.A. The years in issue with regard to petitioner-Canady are 1978 and 1979. Respondent agrees that, should this Court find that petitioner-Canady's employment at the Bellefonte Nuclear Plant was temporary, the Canadys have adequately substantiated the amounts claimed on their 1978 and 1979 tax returns. Johnny R. Dangerfield (Docket No. 9250-83) - Petitioners-Dangerfield resided in Sweetwater, Tennessee at the time they filed their petition. Petitioner-Dangerfield began working as a pipefitter for the Tennessee Valley Authority at its Sequoyah Nuclear Plant on September 11, 1975. During his employment with T.V.A., petitioner-Dangerfield was employed subject to a series of "11/29" contracts. He voluntarily resigned from his position with T.V.A. on September 6, 1979 in *280 order to accept a job at Rust Engineering. Later in that same year, he was laid off and accepted employment with J. M. Foster. He was employed by Foster for the remainder of 1979 and on January 7, 1980, he returned to T.V.A. at its Watts Bar Plant. Petitioner-Dangerfield was still employed at T.V.A. when this case came to trial. For the taxable year 1979, he deducted $3,746 as an employee business expense for traveling 24,710 miles. OPINION All of the petitioners contend that their employment for the Tennessee Valley Authority was temporary during the years in issue because T.V.A. so classified their positions, and because the impermanence of construction employment in general makes their jobs temporary. Respondent contends that petitioners' employment with the T.V.A. was indefinite or indeterminate. We agree with respondent. Daily commuting expenses are personal in nature and are thus nondeductible pursuant to section 262.[7] This is true even if the taxpayer commutes between his residence and a temporary job site outside his normal area of employment. Turner v. Commissioner,56 T.C. 27 (1971), *281 vacated and remanded on respondent's motion in an unpublished order (2d Cir., Mar. 21, 1972). Nevertheless, respondent has chosen not to so frame the issue, see McCallister v. Commissioner,70 T.C. 505, 508 (1978) and Norwood v. Commissioner,66 T.C. 467, 469 (1976), but rather has framed it in classical terms, see Rev. Rul. 190, 1953-2 C.B. 303, namely, whether petitioners' employment with the T.V.A. at the various nuclear plants was "temporary" or "indefinite." [8]Temporary employment means the sort of employment in which termination within a short period of time can be logically expected and foreseen. "Or, viewed from the other side of the coin, an employment is for an 'indefinite,' 'substantial,' or 'indeterminate' period of time if 'its termination cannot be foreseen within a fixed or reasonably short period of time.'" Mitchell v. Commissioner,74 T.C. 578, 581 (1980). These are questions of fact as to which petitioners have the burden of proof. Mitchell v. Commissioner,supra at 581; Rule 142(a). *282 All of the petitioners, with the exception of James T. Allison, Jr. and Eldon E. Wagers, were employed *283 by the T.V.A. until 1978 pursuant to "11/29" contracts that terminated at the end of 11 months and 29 days. While the 11/29 contracts were in effect, each construction worker's employment was terminated on the stated termination date for a period of approximately 2 weeks. Petitioners, however, were reemployed immediately following these brief termination periods. The termination provision in each of petitioners' work appointments did not indicate that their work would be permanently terminated, nor were petitioners ever told by the T.V.A. that their work would last for only a short time. The primary objective of the 11/29 and other similar contracts used by the T.V.A., which specify employment as "temporary", was to provide management with the flexibility necessary to make rapid adjustments in employment levels to comply with manpower ceilings imposed on the T.V.A. by Presidential directives and the Office of Management and Budget. These contracts were not indicative of the actual amount of time an employee could actually expect to work for the T.V.A."[T]he mere labeling or designation *284 of a job or job permit as 'temporary' by either union or employer is not determinative of the issue." Garlock v. Commissioner,34 T.C. 611, 616 (1960). The fact that petitioners may have been subject to short layoffs following the expiration of their contracts, or other similar appointments, did not make their employment temporary in view of the fact that such layoffs were commonplace and that referral back to the same positions with T.V.A. was customary. In Blatnick v. Commissioner,56 T.C. 1344 (1971), the taxpayer's work on a construction site was interrupted by periodic layoffs during which time he sought new employment through his union and was referred back to the same job from which he had been laid off.We found the taxpayer's employment to be indefinite. "Brief interruptions of work at a particular location do not, standing alone, cause employment which would otherwise be 'indefinite' to become 'temporary'." Blatnick v. Commissioner,supra at 1348. In October 1978, the provision providing for termination within 11 months and 29 days was deleted from the hourly construction appointments by T.V.A. Petitioners assert *285 that, although the termination clause was removed, their employment with the T.V.A. was still of a temporary nature. Mr. Kenneth C. Mitchell, supervisor of trades and labor contract administration for the T.V.A., testified that the "trades and labor temporary construction hourly" appointment used by the T.V.A. after 1978 was characterized as a temporary construction appointment. According to Mr. Mitchell, however, the appointment utilized by T.V.A. after 1978 differed from the 11/29 contract only in that the appointment did not have a specific ending date. In effect, the appointment could continue for an indefinite period depending on T.V.A.'s needs. Mr. Mitchell testified that during the years 1976 through 1979 there were good prospects for continued employment at T.V.A. for persons with petitioners' job skills. There were labor shortages during that period because T.V.A. had two nuclear plants under construction at the same time. Generally, such a construction project would last anywhere from 10 to 14 years. In 1979, T.V.A. did begin deferring and canceling some nuclear units, and the labor supply became somewhat more plentiful. This fact alone does not, however, indicate *286 that petitioners' employment could be expected to last only for a short period of time. Although petitioners may have had no formal assurance of how long their respective jobs with T.V.A. would last, that fact is not determinative of whether their employment was "temporary." McCallister v. Commissioner,70 T.C. 505, 510 (1978). The mere absence of permanence does not require a finding that petitioners' jobs were temporary. Garlock v. Commissioner,supra.
Certain of the petitioners contend that their status within their respective unions as "travelers" made their employment temporary during the years in issue. If a construction worker employed by T.V.A. was not a member of a local having jurisdiction over the jobs for his particular craft at T.V.A., the length of his employment was affected by the fact that he would be expected to step aside in favor of a member of the local in the event of layoffs. There is nothing in the record, however, to suggest that the petitioners who occupied "traveler" status during the years in issue had an increased likelihood of being laid off in a short time.The fact that skilled workers in a taxpayer's craft were *287 in short supply in a certain geographical area such that workers from another area were sent in to work does not cause that taxpayer's work to become temporary rather than indefinite. [9]
One petitioner, James T. Allison, Jr., attempted to differentiate himself from the other petitioners by trying to distinguish his T.V.A. employment contracts from the "11/29" appointments discussed above. Petitioner-Allison was appointed to the position of Assistant General Foreman (Trainee) on April 24, 1978 on a "salary policy temporary full-time annual" contract. On January 2, 1979, he was transferred by the T.V.A. from their Sequoyah Nuclear Plant to their Watts Bar Nuclear Plant, and on April 8, 1983, he was promoted to Assistant General Foreman. According to Mr. Mitchell of the T.V.A., the "salary policy temporary full-time annual" contract is very similar to the 11/29 contract although it is usually a management type of position. Accoring to Mr. Mitchell, at the end of each contract period, "salary policy temporary" employees, like petitioner-Allison, would be reviewed by T.V.A. management. Although there was somewhat *288 less assurance of reinstatement as a trainee, if the employee's work record was good and if there was a need for persons in his craft he would be reinstated. In this regard, petitioner-Allison's contract was essentially the same, insofar as continuity of employment is concerned, as the contracts under which the other petitioners labored during the years in issue. A summary of the T.V.A. employment record of these petitioners is as follows: Petitioner
Period
Years in Issue
Allison
09/70 to present
1977 - 1980
Wagers
12/75 to present
1976       Bishop
11/77 to 12/80,
02/81 to present
1980 - 1981
Canady
03/76 to present
1978 - 1979
Dangerfield
09/75 to 09/79,
01/80 to present
1979       Although petitioner-Bishop had a short break in his employment with the T.V.A., he was forced to leave because of labor problems and not because of the alleged temporary nature of his employment. In fact, petitioner-Bishop returned to the T.V.A. several months later when his job resumed. Similarly, petitioner-Dangerfield had a break in his employment in September 1979. However, he left T.V.A. voluntarily to accept another job with Rust Engineering. *289 When Rust Engineering completed their operations at that job site, petitioner-Dangerfield accepted a job with J. M. Foster where he was employed until January of 1980 at which time he returned to the T.V.A. These five petitioners have a total of 45 years of employment with the T.V.A. Employment of such duration weighs heavily against their contention that their employment during the years in issue was temporary. [10]
We note that all of the petitioners were engaged throughout the years in question in construction projects. Obviously, as with all construction projects, the remaining time for employment *290 diminishes as the project nears completion. In this sense construction work is by its very nature impermanent. The impermanence of a job by itself, however, does not make that employment temporary. Commissioner v. Peurifoy,254 F.2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958); Garlock v. Commissioner,34 T.C. at 616. [11] "Even if it is known that a particular job may or will terminate at some future date, that job is not temporary if it is expected to last for a substantial or indefinite period of time." Norwood v. Commissioner,66 T.C. 467, 469 (1976). See also Jones v. Commissioner,54 T.C. 734 (1970), affd. 444 F.2d 508 (5th Cir. 1971). The T.V.A. has used the word "temporary" to classify some of its employees. T.V.A.'s use of the word, however, is far different from its use as a term of art in classifying employment for Federal income *291 tax purposes. The term "temporary" is used by the T.V.A. to differentiate between different classes of employees for purely administrative reasons while, from a tax standpoint, the word is used to distinguish between certain types of employment and requires strict application of the relevant legal principles. Here, petitioners' employment albeit impermanent, was clearly indefinite because termination was not forseeable within a short period of time. Since their employment was not temporary, we hold that they may not deduct the expenses of meals, lodging and transportation while living near or commuting to work pursuant to either section 162(a) or section 162(a)(2). [12]
Issue 2. (Allison) Docket No. 8359-79 - Continuation of Pay
FINDINGS OF FACT On November 19, 1976, petitioner-Allison was injured on the job.His injury was diagnosed as a hernia although he continued to work for the six months *292 immediately following his accident at which time he underwent corrective surgery. As a result of the operation, he was out of work for a 32-day period.During that period he received continuation of pay pursuant to the Federal Employment Compensation Act, 5 U.S.C. section 8118(a) (1982) (hereinafter "the Compensation Act"). OPINION Section 104(a)(1) provides that, except in the case of amounts attributable to deductions allowed under section 213, gross income does not include "amounts received under workmen's compensation acts as compensation for personal injuries or sickness." The regulations promulgated pursuant to section 104(a) interpret the statute as follows: Amounts received under workmen's compensation acts. -- Section 104(a)(1) excludes from gross income amounts which are received by an employee under a workmen's compensation act, * * * or under a statute in the nature of a workmen's compensation act which provides compensation to employees for personal injuries or sickness incurred in the course of employment * * *. [Section 1.104-1(b), Income Tax Regs. *293 ; emphasis added.] The amounts payable pursuant to the Federal Employees' Compensation Act, 5 U.S.C. section 8101 et seq., have traditionally been the sole means by which Federal employees may recover for employment related injuries. 5 U.S.C. section 8116(c) (1982); Lockheed Aircraft Corp. v. United States,460 U.S. 190 (1983). Thus, the benefits provided to T.V.A. employees with regard to work related injury or illness through the Compensation Act would appear to be payable "under a statute in the nature of a workmen's compensation act." Section 1.104-(b), Income Tax Regs. See Dyer v. Commissioner,71 T.C. 560 (1979). The Compensation Act, however, was amended in 1974 by Public Law 93-416, 88 Stat. 1143, to specifically authorize the continuation of an employee's pay for a period of 45 days commencing on the date that the employee files a claim involving an occupational injury. The provision was intended to provide an injured Federal employee with relief from the hardship that often resulted when disability *294 payments payable to an injured worker were delayed because of a protracted administrative process. Because the salary continuation payments were intended merely to provide the injured worker with relief until disability benefits provided for by the Compensation Act commenced, the drafters of the provision made clear their intention that any amounts paid to employees during this 45-day period were to be "treated as income which is neither excludable in computing adjusted gross income, nor exempted under any other provision of the Internal Revenue Code of 1954, as amended." S. Rept. No. 93-1081, 3 U.S. Cong. & Admin. News, 93d Cong., 2d Sess. 5344 (1974). Thus, Congress clearly intended that the benefits payable to Federal workers pursuant to section 8118 of the Compensation Act were to be in the nature of a wage continuation program in contrast to disability benefits similar to those payable at the termination of the relevant 45-day period. Therefore, we conclude that the payments that petitioner-Allison received under the Compensation Act are not excludable from income pursuant to section 104(a). [13]
*295 Alternatively, petitioner-Allison argues that the continuation of pay he received in 1976 was excludable from income under section 105(d). Section 105(d) provides, in pertinent part, as follows: (d) Certain Disability Payments. -- (1) In General. -- In the case of a taxpayer who -- (A) has not attained age 65 before the close of the taxable year, and (B) retired on disability and, when he retired, was permanently and totally disabled, gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of permanent and total disability. * * * (4) Permanent and Total Disability defined -- For purposes of this subsection, an individual is permanently and totally disabled if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. * * * It *296 was clear from petitioner-Allison's testimony that his injury did not prevent him from continuing to work for the six months following his accident. Furthermore, he returned to his full-time duties with the T.V.A. after a period of only four weeks and four days. He provided no evidence to indicate that his disability lasted or would have been expected to last for at least 12 months.Thus, petitioner-Allison did not have a permanent and total disability for purposes of section 105(d). Accordingly, we hold that the amount received by petitioner-Allison pursuant to section 8118(a) of the Compensation Act because of his work-related injury is taxable. Issue 3. (Allison) Docket No. 14134-82 - Meal Allowance
FINDINGS OF FACT Petitioner-Allison was paid one-half hour in additional wages in lieu of a meal period for every 10-hour day he worked. This was due to the fact that he had to provide his own meals because there were no eating facilities at his place of employment. Petitioner-Allison was paid a meal allowance in the following amounts, which he excluded from income during the years in issue: Year
Amount
1977
$1,563.96
1978
3,542.00
1979
4,761.60
1980
880.50
*297 The provision for petitioner-Allison's meal allowance was contained in the bargaining agreement between T.V.A. and the union and was referred to by him as a fringe benefit. In effect, his agreement with his employer provided that if he was required to be on the job for 10 consecutive hours he was to be paid an extra half-hour's day. Respondent treated the amounts received by petitioner-Allison as a "meal allowance" during the years in issue as being in the nature of overtime pay and neither excludable from income nor deductible. OPINION Section 119 provides that an employee may exclude from income the value of any meals * * * furnished to him by his employer, "but only if * * * the meals are furnished on the business premises of the employer." In Commissioner v. Kowalski,434 U.S. 77 (1977), the Supreme Court held that section 119 provides an exclusion from gross income for meals or lodging furnished in kind for the convenience of the employer but it does not apply to cash reimbursements. Petitioner-Allison testified that he was paid an additional one-half hour's *298 pay for each 10-hour day he worked because he had to provide his own meals since there were no eating facilities at his place of employment. But he had complete dominion and control over these meal allowances and they are not analogous to meals "furnished by the employer." Accordingly, we hold that such amounts constitute taxable income not excludable under section 119 or otherwise deductible. Issue 4. (Allison) Docket No. 8359-79 - Section 6653(a) Addition to Tax for 1977
FINDINGS OF FACT Petitioners-Allison are the only petitioners in these consolidated cases to have the section 6653(a) addition to tax imposed. In respondent's notice of deficiency for 1977 (docket No. 8359-79) there were four adjustments: (1) employee business expenses (travel); (2) casualty losses; (3) work clothes; and (4) charitable contributions. The Allisons have conceded the casualty loss and charitable contribution issues and respondent has agreed that the deduction claimed for work clothes should be allowed. According to respondent, the claimed casualty loss deductions and the charitable contributions, which are conceded by the Allisons, are the only items on which the section 6653(a) addition *299 to tax is based. OPINION Section 6653(a) provides that "[i]f any part of any underpayment * * * is due to negligence or intentional disregard of rules or regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment." Petitioners bear the burden of proof to show error in respondent's determination that such addition to tax is appropriate. Bixby v. Commissioner,58 T.C. 757 (1972); Rule 142(a). Petitioners-Allison presented no evidence to show that their underpayment of tax was not due to negligence. Accordingly, we sustain respondent's determination that they are liable for the section 6653(a) addition to tax for 1977. To reflect concessions and our conclusions with respect to the disputed issues, Decisions will be entered under Rule 155.
Footnotes
1. The following cases are consolidated herewith: Eldon E. and Myrtle T. Wagers, docket No. 8688-80; James T. Allison, Jr. and Annette M. Allison, docket No. 14134-82; Robert J. and Mary G. Bishop, docket No. 2679-83; Eugene P. and Frances D. Canady, docket No. 9237-83; Johnny R. and Deborah J. Dangerfield, docket No. 9250-83.↩
2. Petitioners in docket Nos. 8688-80, 2679-83, 9237-83, and 9250-83 appeared pro se.↩
3. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Petitioner-Wagers' status as a "traveler" during the year in issue meant that when employment cutbacks occurred at a given work location, local workers were given preferential treatment over persons who were classified as "travelers" by the union. T.V.A. did not sanction or condone this practice, although union pressure made it essentially a condition of employment.↩
5. See note 4, supra.↩
6. Respondent agrees that petitioner-Bishop's employment in Florida was temporary and that his expenses incurred at that job site in the amount of $932 are an allowable deduction in the 1981 taxable year.↩
7. Sec. 262 provides as follows: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
8. One petitioner deducted expenses incurred in maintaining a second residence near his place of work. He seeks to justify the deduction as a traveling expense under sec. 162(a)(2), which requires (inter alia) that the expense be incurred while the taxpayer is away from home "overnight." See United States v. Correll,389 U.S. 299 (1967). However, even though the statutory justification for the deduction claimed by the petitioner lies in sec. 162(a)(2), whereas the statutory justification for the deductions claimed by the remaining four petitioners lies in the general business expenses provisions of sec. 162(a)↩, the "temporary" versus "indefinite" employment issue is common to both sections and provides the basis upon which we review the disallowance of the deductions in question as to all petitioners.
9. Clark v. Commissioner,T.C. Memo. 1983-460↩.
10. See Wrolstad v. Commissioner,T.C. Memo. 1985-188; Terry v. Commissioner,T.C. Memo. 1984-457; Nulsen v. Commissioner,T.C. Memo. 1984-307; Adams v. Commissioner,T.C. Memo. 1984-67; Aguirre v. Commissioner,T.C. Memo. 1984-66; Schurwan v. Commissioner,T.C. Memo. 1983-699; Kostos v. Commissioner,T.C. Memo. 1983-698; Rutherford v. Commissioner,T.C. Memo. 1983-697; Van Horn v. Commissioner,T.C. Memo. 1983-693↩.
11. See also Kennedy v. Commissioner,T.C. Memo. 1970-58, affd. per curiam 451 F.2d 1023↩ (3d Cir. 1971).
12. Because we have determined that petitioners' employment with the T.V.A. is not temporary, we find it unnecessary to address the related issue of whether certain petitioners properly substantiated their automobile, meal and lodging expenses as required by sec. 162(a)↩.
13. As noted above, the payments received by petitioner-Allison following his surgery did not commence until six months after the injury. Thus, according to petitioner-Allison, the 45-day period prescribed by sec. 8118(a) of the Compensation Act had expired and the benefits he received during his absence from work constituted benefits payable pursuant to the disability provisions of the Compensation Act. We disagree.Sec. 8118(c)↩ provides that the employee's "compensation for disability does not begin * * * until termination of pay * * * or the use of annual or sick leave ends." Thus, the 45-day continuation of pay period, plus vacation and sick leave must be utilized before the disability benefits payable under the compensation Act will commence. Here the relevant 45-day period did not begin until petitioner-Allison began his absence from work.